## COMMONWEALTH *vs.* KEITH NIEMIC.

Bristol. April 7, 1998. - July 6, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof, Reasonable doubt, Assistance of counsel, Capital case. *Malice. Homicide. Self-Defense. Evidence,* Dying declaration, Relevancy and materiality, Hearsay, Impeachment of credibility, Exculpatory. *Constitutional Law,* Assistance of counsel. *Grand Jury.*

At the trial of an indictment for murder in the first degree, no substantial likelihood of a miscarriage of justice was created by the judge's clear, correct, and repeated instructions concerning the Commonwealth's burden of proof with respect to provocation, malice, and sudden combat [720-721], and no substantial likelihood of a miscarriage of justice was created by the judge's single incorrect instruction, which he corrected, regarding the Commonwealth's burden of disproving sudden combat or heat of passion as elements of voluntary manslaughter [721-722].

At the trial of an indictment for murder in the first degree, the judge correctly instructed the jury on the issues of self-defense and excessive force [722], and there was no error in the judge's failure to give an incorrect instruction with respect to the defendant's duty to retreat [722-723].

At the trial of an indictment for murder in the first degree, the judge did not err in instructing the jury to consider "the size and nature of any weapons used," rather than "the instrument employed," in their determination whether the murder was committed with extreme atrocity or cruelty. [723]

At a murder trial, certain statements of the victim were properly admitted as dying declarations [723-724], and the defendant's statement to another with regard to a knife he had in his possession was relevant to his intent to commit the crime [724] and that person's stated reaction to the knife was properly admitted to demonstrate the nature of the knife [724-725]; no substantial likelihood of a miscarriage of justice was created by the admission of the evidence.

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the prosecutor's question on cross-examination of a defense witness suggesting a motive for her to fabricate her testimony in a manner favorable to the defendant. [725-726]

At a murder trial, there was no error in the admission in evidence of testimony of an eyewitness that another person had said within the defendant's hearing that the victim was unarmed, as such testimony was relevant to whether the defendant believed the victim was armed. [726]

At a murder trial, defense counsel's raising of a causation defense based on

alleged negligent medical care of the victim was not manifestly unreasonable and medical records in support of that defense were properly admitted in evidence; no substantial likelihood of a miscarriage of justice was created and no ineffective assistance of counsel was demonstrated. [726-727]

The prosecutor's presentation of a murder case to the grand jury did not distort the evidence by excluding exculpatory material, and a Superior Court judge did not err in denying the defendant's motion for dismissal of the indictment. [727-728]

INDICTMENT found and returned in the Superior Court Department on December 19, 1995.

A motion to dismiss the indictment was heard by *Walter E. Steele*, J., and the case was tried before *Raymond J. Brassard*, J.

*David Hayes Erickson* for the defendant.

*Shaun S. McLean*, Special Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Keith Niemic, was convicted of murder in the first degree by reason of extreme atrocity or cruelty. At his trial, Niemic admitted that he stabbed the victim. His defense was self-defense. He also claimed that his conduct did not cause the victim's death. Represented by new counsel on appeal, Niemic asserts errors in (1) the judge's instructions; (2) the admission of certain evidence; (3) his trial counsel's performance, which he claims was ineffective; and (4) the prosecutor's presentation to the grand jury. We affirm the conviction and see no reason to exercise our power under G. L. c. 278, § 33E, to reduce the degree of guilt or order a new trial.

We summarize the facts attending the killing and reserve certain facts for later discussion. On the night of September 25, 1995, the victim was involved in an argument with Stephanie St. Amour, who was an acquaintance of both the victim and the defendant, outside St. Amour's home in Fall River. The victim had been drinking and was obviously intoxicated. A group of young men had gathered. The victim reached into his pants and threatened to shoot them, but never produced a gun. Several of the young men testified that they were taunting the victim, urging him to go ahead and shoot, and saying that he did not really have a gun. The defendant, apparently attempting to defuse the situation, approached the victim. Threatening to shoot the defendant, the victim shoved him against the house and turned back to St. Amour. The defendant then stabbed the victim in the back of the shoulder several times. The victim turned around,

and the defendant stabbed him once more, this time in the heart. A Fall River police officer found the victim collapsed on a median strip of the street, still alive but bleeding profusely. The victim was taken to a hospital where he died within hours. The defendant had fled the scene and was located in Vermont several days later. He was using an assumed name.

1. *The instructions.* "We evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words." *Commonwealth* v. *Trapp*, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996). We "[do] not . . . scrutiniz[e] bits and pieces removed from their context." *Commonwealth* v. *Perez*, 390 Mass. 308, 313 (1983), quoting *Commonwealth* v. *Hill*, 387 Mass. 619, 624-625 (1982). "[T]he adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Galford*, 413 Mass. 364, 371-372 (1992), cert. denied, 506 U.S. 1065 (1993), quoting *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980).

The defendant argues that there were several errors in the instructions to the jury. Because he did not object to the instructions at trial, we review for a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992) (standard under G. L. c. 278, 33E, is more favorable to defendant than standard for ineffective assistance of counsel).

(a) The defendant argues that the judge failed to explain clearly the Commonwealth's burdens with respect to provocation, malice, and sudden combat. In support of his argument, the defendant "parses the charge and attacks it piecemeal. We, however, view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon*, *supra* at 231-232.

The defendant bases his argument primarily on our decision in *Commonwealth* v. *Boucher*, 403 Mass. 659 (1989), in which we stated that "[m]alice and adequate provocation are mutually exclusive." *Id.* at 661-662. The judge did not use the language from *Boucher* or otherwise emphasize the " 'malice' — 'no malice' fork in the road." *Id.* at 663. The judge did, however, instruct the jury that if they had a reasonable doubt whether malice existed, they had to acquit the defendant of murder. The judge clearly, articulately, and repeatedly emphasized the Commonwealth's burden to prove each and every element of the crime, including malice, beyond a reasonable doubt.

In particular, the judge stated that, "[w]here there is evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion" and that "for any killing to be either first- or second-degree murder, it must be an unlawful killing committed with malice aforethought as I have defined malice aforethought." By contrast, in *Commonwealth* v. *Todd*, 408 Mass. 724 (1990), we held that similar instructions were adequate, although the judge failed to state explicitly that the Commonwealth had the burden of proving the absence of provocation. See *id.* at 727-728. We also note that the judge here instructed the jury at least four times that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. The instructions here properly placed the burden of proving malice on the Commonwealth. We conclude that the instructions, read as a whole, did not create a substantial likelihood of a miscarriage of justice.

(b) The defendant also argues that the judge incorrectly defined the elements of voluntary manslaughter. The judge stated that the Commonwealth was required to prove beyond a reasonable doubt, among other elements, that "the defendant injured [the victim] as a result of a sudden combat or in the heat of passion or using excessive force in self-defense." In *Commonwealth* v. *Torres*, 420 Mass. 479, 488 & n.8 (1995), decided before this trial, we held that such an instruction misstated the law by misplacing the burden as to sudden combat and heat of passion. Here, after the incorrect instruction, the judge correctly stated that the Commonwealth bore the burden of disproving heat of passion, that the defendant did not have to prove anything, and, at least four times, the judge instructed that the Commonwealth bore the burden of disproving self-defense.

We note that whether the defendant reasonably believed the victim's threat, the force used, and the defendant's failure to retreat were the focus of the summations. The Commonwealth did not dispute the claim of provocation because its evidence established the victim's threatening, belligerent behavior. The Commonwealth focused on the lack of merit to the defendant's claim of self-defense because the victim was stabbed in the back. The defendant claimed that he reasonably believed the victim was threatening him and that the force used was not excessive in light of the victim's threatening behavior. Provoca-

tion was not a "live" issue.[1] Here, as in *Torres, supra* at 490-491, the erroneous instruction in the context of the entire charge could not have misled the jurors. We conclude that the error did not create a substantial likelihood of a miscarriage of justice.

(c) The defendant next claims that, by requiring the Commonwealth to prove excessive force, the instructions created a presumption of malice. This argument is without merit. The instructions properly placed the burden of proving malice on the Commonwealth and made it clear that, if the Commonwealth failed to prove that the defendant was not acting in self-defense, but did prove beyond a reasonable doubt that he used excessive force, the defendant would be guilty of manslaughter and not murder. This was a correct statement of the law, see *Torres, supra* at 491-492.

(d) The defendant next argues that the judge improperly failed to instruct the jury that, if the defendant acted in self-defense, but failed to retreat where he properly should have done so, a verdict of manslaughter would be warranted. We have never held that this is the law,[2] and the defendant offers no reason to do so now. Furthermore, "[t]he right of self-defense does not accrue to a person until he has availed all proper means to avoid physical combat." *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966). Thus, if a defendant has an opportunity to retreat but fails to do so, the defendant has no privilege to use force in self-defense. There was no error.

(e) The defendant next argues that the judge improperly failed to instruct the jury that the victim's deadly threats, combined with the menacing act of reaching into his pants, ostensibly for a gun, justified the defendant's use of deadly force in self-

---

[1]*Commonwealth* v. *Acevedo, ante* 714 (1998), is not to the contrary. In that case, provocation was a live issue "plainly presented by the evidence." *Id.* at 715. By contrast, in this case, the trial focused on the reasonableness of the defendant's belief that the victim was threatening him, the force used, and the failure to retreat, not provocation.

[2]The defendant relies on *Commonwealth* v. *Gagne,* 367 Mass. 519 (1975), for this proposition. In *Gagne,* we remarked, in passing and without citation, that "excessive force or failure to retreat could warrant a finding of manslaughter." *Id.* at 526. However, the defendant's complaint in *Gagne* was that the judge failed to make it clear that if "the defendant acted in self-defense but *went beyond what was necessary in the circumstances,* the offense would be manslaughter" (emphasis added). *Id.* at 525-526. As the emphasized language indicates, the primary issue was excessive force and not failure to retreat. We therefore regard the "failure to retreat" language as dictum.

defense or defense of others. The judge did, however, instruct the jury that "a person may not lawfully use force to defend himself or a third person because of reproachful words . . . if those words are unaccompanied by an actual or menaced assault."[3] The defendant does not argue that a threat alone should be sufficient, but that the judge should have said more about the threatening, rather than reproachful, nature of the victim's words. We think the instructions were adequate. The jury could readily have concluded that the threats combined with the act constituted an "actual or menaced assault . . . plac[ing] the defendant in reasonable and actual apprehension of a physical attack."

(f) The defendant's final argument regarding the instructions is that the judge misstated one of the factors from *Commonwealth* v. *Cunneen*, 389 Mass. 216 (1983), by instructing the jury to consider "the size and nature of any weapons used" rather than "the instrument employed." See *id.* at 227. He offers absolutely no reason, however, why the judge's language is any less favorable to him. In our view, the two phrases are substantially equivalent. There was no substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 30-31 n.13 (1996) (no error in *Cunneen* charge using identical language); *Torres, supra* at 484 ("Judges need not deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words").

2. *Evidentiary rulings.* The defendant next argues that the judge erred in admitting certain evidence. (a) The defendant challenges the admission of testimony as to two of the victim's statements. First, when the police officer first found the victim on the median strip and asked him who had stabbed him, the victim said that "Stephanie St. Amour did it." Second, at the hospital, when the officer asked whether anyone else was involved, the victim said, "Yes, she and her boyfriend did it to me." The judge admitted these as dying declarations without objection. The defendant argues that the statements did not meet the requirements of dying declarations because the victim was

---

[3]The defendant also argues that the judge's instruction that "[m]ere insulting words and threatening gestures alone with nothing else do not constitute adequate provocation to reduce a killing from murder to manslaughter" misstated the law governing the use of deadly force in self-defense. His argument is without merit. This instruction concerns provocation, and it is a correct statement of the law.

in stable condition and did not begin to experience severe problems until some forty-five minutes after the latter statement, so he could not have believed that death was imminent. We disagree.

The evidence showed that, when the officer found the victim, he had been stabbed in the heart and was bleeding profusely. There was also testimony that, at the hospital, he was "breathing heavily" and "appeared to be having a hard time" and that the officer questioning him "had to work to get his attention to focus." It was permissible to infer from this that the victim was aware that he was dying. See *Commonwealth* v. *Key*, 381 Mass. 19, 25 (1980) (sense of impending death may be inferred from the character of the injury). Furthermore, the judge instructed the jury to consider the victim's statements only if they met the requirements of dying declarations. We therefore conclude that there was no substantial likelihood of a miscarriage of justice.

(b) There was testimony that, several days before the murder, the defendant showed a knife to a local merchant and remarked that he could hardly wait to put it to use.[4] The defendant moved before trial to exclude this statement. The motion was denied, and the defendant declined the judge's offer to give a limiting instruction. At trial, the defendant neither objected nor requested a limiting instruction. We therefore review only for a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Keniston*, 423 Mass. 304, 308 (1996) (motion in limine does not preserve appellate rights without an objection at trial).

The defendant argues that the statement that he could not wait to put the knife to use was improperly admitted because it showed only a bad character or propensity to commit the crime charged. In denying the motion in limine, however, the judge ruled, and we agree, that the statement was relevant to the defendant's intent to commit the crime. Moreover, the statement primarily shows deliberate premeditation, a theory that the jury rejected, as shown by the verdict. There was no substantial likelihood of a miscarriage of justice.

(c) Two bystanders who had been in the store testified, without objection, that, while the defendant was showing the knife to the merchant, the merchant told the defendant to get out of the store and to put away the knife so there would be no

---

[4]The murder weapon apparently was never found and thus was not in evidence. It is unknown whether the knife shown to the merchant was the murder weapon.

trouble. The defendant now argues that the merchant's statements were improperly admitted hearsay. However, the statements were not offered for their truth, but to show, by the merchant's reaction to the knife, that it was a weapon, and not merely a fishing knife, as the defendant claimed. They were thus extrajudicial statements offered to show the nature of an associated object. "Such extrajudicial declarations are treated as nonhearsay in spite of the fact that the implications of the declarations must be believed for the declarations to have probative value." P.J. Liacos, Massachusetts Evidence § 8.2.3, at 440-441 (6th ed. 1994), citing *Commonwealth* v. *Massod*, 350 Mass. 745 (1966), and *Commonwealth* v. *Jensky*, 318 Mass. 350 (1945). There was no substantial likelihood of a miscarriage of justice.

(d) St. Amour testified for the defendant, stressing the victim's violent behavior and denying that she actually saw the defendant stabbing the victim. On cross-examination, she acknowledged that, immediately after the stabbing, she said to the defendant's brother, "Your brother just stabbed [the victim]." The prosecutor then asked the following question:

> *Q.*: "And the first thing he says to you is, 'Don't rat out my brother, because he'll know who it came from and he'll come looking for you,' right? That's the first thing he says to you?"

> *A.*: "He didn't say it to me. He said it to — he said, 'Nobody better rat on my brother.' "

There was no objection to the question or the answer. The defendant now argues, relying on *Commonwealth* v. *Fordham*, 417 Mass. 10, 20 (1994), that the question was irrelevant and inflammatory, communicating by innuendo St. Amour's fear of the defendant. The defendant's reliance on *Fordham* is misplaced. In *Fordham*, the prosecutor asked the defendant a baseless and inflammatory question, to which he could not have expected an affirmative answer, tending to communicate by innuendo that the defendant intended to kill and mutilate his wife, the victim. *Id.* at 20-21. Here, by contrast, the question was asked in the context of a thorough attack on the witness's credibility. The prosecutor was impeaching the witness by showing that she had a motive to lie, namely, fear that the defendant

would retaliate if she incriminated him.[5] "Questions concerning a witness's fear of testifying to the truth . . . are appropriate in the judge's discretion." *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975). The witness was thoroughly impeached by her several admissions that she lied to the police about five times and by her conduct toward the victim.[6] The prosecutor did not argue it in his summation, although he did refer to other evidence challenging the witness's credibility. The challenged question was merely a small piece of this credibility attack. In these circumstances, there was no substantial likelihood of a miscarriage of justice.

(e) A witness testified, over objection, that, during the altercation, another bystander stated that the victim had nothing on him or that the victim did not have a gun. The defendant argues that the statement was inadmissible, either because a bystander's opinion is irrelevant to the defendant's apprehension of harm, see *Commonwealth* v. *Jones*, 319 Mass. 228, 230 (1946), or because there was an insufficient foundation due to testimony that the defendant had not heard the bystander's statement. However, the statement was not offered merely for the bystander's opinion, as in *Jones*, but for what the bystander may have communicated to the defendant. If the defendant heard the statement, it was relevant to whether the defendant believed the victim was armed. There was evidence from which the jury could infer that the defendant could hear (for example, the defendant's testimony that he could hear what the victim was saying). There was no error in the admission of the bystander's statement.

3. *Ineffective assistance of counsel.* The defendant argues that he received ineffective assistance of counsel in violation of his constitutional rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. We review this claim under the favorable substantial likelihood of a miscarriage of justice standard. See *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992).

The defendant's primary claim is that trial counsel unreason-

---

[5]We note that the judge later specifically instructed the prosecutor not to inquire as to the witness's fear.

[6]Although the witness denied having any romantic relationship with the victim, she stated that the victim had strong feelings for her and that she thought it was funny to make him jealous and play him off other men. On the day of the killing, however, she said she wanted the victim out of her life.

ably defended him on the ground that hospital personnel caused the victim's death. He argues that this defense was not viable and, because it necessitated the introduction of medical records and other evidence, this defense called attention to the victim's suffering and established one or more of the *Cunneen* factors. A causation defense based on negligent medical care is not viable. See *Commonwealth* v. *Williams*, 399 Mass. 60, 64 (1987).

However, we have never ruled out the argument that reckless medical care can be an intervening cause of death. See *Commonwealth* v. *Golston*, 373 Mass. 249, 256-257 (1977), cert. denied, 434 U.S. 1039 (1978). "The general rule is that the intervening conduct of a third party will relieve a defendant of culpability only if such an intervening response was not reasonably foreseeable." *Commonwealth* v. *Askew*, 404 Mass. 532, 534 (1989), citing *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 37 (1984). We recognize that our cases do not foreclose the conclusion that reckless medical care is not reasonably foreseeable. Therefore, such a defense is viable and not manifestly unreasonable. Moreover, the judge gave a full instruction on the issue of causation. Further, there was evidence, apart from that which the defendant introduced in connection with this defense, from which the jury could determine that one or more *Cunneen* factors were established. We conclude that the causation defense created no substantial likelihood of a miscarriage of justice.

The defendant further argues that counsel was ineffective for failing to object to the evidence identified above and for failing to seek redaction of the victim's medical records. Because, as explained above, the admission of the evidence itself was not reversible, the failure to object did not constitute ineffective assistance of counsel. See *Commonwealth* v. *Murphy*, 426 Mass. 395, 404 (1998). Also, the defendant has not shown that the failure to redact the medical records created a substantial likelihood of a miscarriage of justice.

4. *Dismissal of the indictment.* The defendant argues that the indictment must be dismissed because the presentation to the grand jury excluded certain exculpatory evidence. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 446-447 (1984). However, the prosecutor need not present all exculpatory evidence to the grand jury. See *id.* at 447. Our review of the transcript shows that the grand jury were informed that the victim was the instigator — that is, that the defendant may have been acting in

self-defense. We do not believe that the presentation distorted the evidence. The defendant's motion to dismiss the indictment was correctly denied.

5. *Conclusion.* We have reviewed the record and conclude that the verdict was consonant with justice. Accordingly, we decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant to reduce the verdict to a lesser degree of guilt or to order a new trial.

*Judgment affirmed.*