Commonwealth *vs.* Derek Glacken.

Bristol. January 11, 2008. - April 14, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Botsford, JJ.

*Practice, Criminal,* Instructions to jury, Assistance of counsel, Defendant's decision not to testify, Waiver, Capital case. *Homicide. Self-Defense.*

At a murder trial, no substantial likelihood of a miscarriage of justice arose from one sentence in the judge's instructions to the jury that summarized the instructions' lengthy description of excessive force in the context of self-defense, where the over-all instruction otherwise provided a clear and accurate description of the law, and the disputed sentence could not have misled the jurors. [166-169]

A Superior Court judge properly denied a criminal defendant's motion for a new trial based on ineffective assistance of counsel, where the judge did not abuse his discretion in declining to credit the defendant's supporting affidavit, submitted seven years after the trial had concluded, in which he asserted that his counsel failed to advise him of his right to testify, and instead told him he would not testify, and where the judge appropriately relied on trial counsel's representations at trial that he had advised his client of his right to testify, without any need to engage in a colloquy with the defendant to determine that the defendant had knowingly and intelligently waived his right to testify. [169-170]

Indictment found and returned in the Superior Court Department on June 26, 1996.

The case was tried before *Patrick F. Brady*, J., and a motion for a new trial, filed on April 6, 2006, was heard by him.

*Joseph J. Balliro, Jr.*, for the defendant.

*Rachel J. Eisenhaure*, Assistant District Attorney, for the Commonwealth.

Botsford, J. A jury convicted Derek Glacken, the defendant, of murder in the first degree by reason of extreme atrocity or cruelty.[1] Francis Sullivan, the victim, was stabbed at least thirty times after going outside for a walk with the defendant in the early morning hours of June 14, 1996. At trial the defendant

---

[1]The jury rejected the Commonwealth's theory of deliberate premeditation.

argued that Sullivan's death was the result of excessive force used in self-defense, and should result not in a conviction of murder in the first degree, but in conviction of voluntary manslaughter. On appeal the defendant challenges one sentence in the judge's jury instruction on voluntary manslaughter. He also argues that trial counsel prevented the defendant from testifying in his own defense. We reject the defendant's arguments, and after reviewing the entire case, we decline to exercise our authority under G. L. c. 278, § 33E, to reduce the degree of guilt or order a new trial.[2]

1. *Background.* At the defendant's trial, evidence was presented from which the jury could have found the following facts. On the evening of June 13, 1996, the defendant and his friend, John Conte, finished their day's work on a lakeside house construction project in Taunton. After dinner with Conte's uncle at a nearby restaurant, the pair continued their evening out with visits to several local bars, eventually arriving at a bar called Escapades. There the defendant and Conte met Sullivan, the victim, who was accompanied by his friend, Wendy Fitzsimmons Pizzolo. At one point Pizzolo told Conte that Sullivan was gay. The group stayed until last call, at about 12:30 A.M. By the time they left, Conte and the defendant had each consumed approximately twelve beers over the course of the evening, and Sullivan at least six.

The four agreed to return to Conte's house, which was next door to the lakeside house on which he and the defendant had been working that day. Conte was romantically interested in Pizzolo, and asked the defendant to take Sullivan for a walk outside so he could be alone with Pizzolo in the house. The defendant agreed, and when the group arrived at the house, Conte and Pizzolo went into the house while Sullivan and the defendant went for a walk.

When Conte and Pizzolo later went outside to look for Sullivan and the defendant, Conte found the defendant crouching in the bushes, covered in blood. The defendant said, "I just killed

[2]On April 6, 2006, the defendant filed a motion for a new trial, which was denied by the trial judge without a hearing. This consolidated appeal includes both his direct appeal and an appeal from the denial of his motion for a new trial.

him," and "You've got to help me. You've got to get my shirt. It's next to the body." Pizzolo was some distance away and did not see the defendant or hear his comments.

Conte and Pizzolo continued looking outside. They then returned to Conte's house and encountered the defendant by himself. The defendant no longer had blood on his chest, but both Conte and Pizzolo saw blood on his back and neck. Frightened by the defendant's erratic behavior, Conte locked himself in the bathroom and telephoned Christopher Valstyn, a mutual friend. After the defendant started banging on the bathroom door, Conte left the bathroom and handed the defendant the telephone. On the telephone with Valstyn, the defendant said that Sullivan "attacked me," grabbed the defendant "by the balls," and "tried to get queer with me, so I stabbed him." The defendant also said that he had used Conte's knife to stab Sullivan, and he mentioned throwing the knife in the lake.

At approximately 1:30 A.M. on June 14, 1996, Conte's neighbor was awakened by the sound of screaming, and then heard Sullivan saying, "Wendy, I'm bleeding to death," three or four times. The police arrived at 2:10 A.M. in response to a telephone call from another neighbor. Officer Stephen Correia of the Taunton police department discovered Sullivan's body in the middle of the road. He had been stabbed at least thirty times, and suffered wounds to his heart, lungs, and liver. A trail of blood revealed that he traveled 266 feet from where the stabbing occurred to where he was found by Officer Correia. Conte's knife later was found in the nearby lake, and testing revealed human blood on the knife's blade.

When the police first arrived on the scene, the defendant told them that he and Sullivan had been attacked by two unknown men. The police found no evidence of these assailants. The defendant did not testify at trial, but his theory was that the stabbing was in response to Sullivan's sexual advances. According to the defendant, once he started to break free of Sullivan's advances he began to suffer from a flashback as a result of posttraumatic stress disorder. Dr. Ronald Ebert, a licensed forensic psychologist and the defendant's expert witness, testified that the flashback related to three traumatic experiences the defendant had suffered: first, when he was a child, someone had

attempted to molest him; second, when he was twelve years old, he had lost four fingers on one hand and one finger on the other when a homemade pipe bomb, or firework, had exploded in his hands; and third, one month before Sullivan's death the defendant had suffered a serious beating, resulting in a lengthy hospital stay, after a similar night of pool and drinking with Conte. This last memory was particularly troubling to the defendant because on June 12, 1996, the day before the events leading to Sullivan's death, the defendant had recounted the details of the beating while testifying as a witness before a grand jury considering charges against the man who had beaten him. According to Dr. Ebert, during the flashback the defendant saw two faces that were not Sullivan's: the face of the person who had tried to molest him, and the man who had beaten him the month before.

2. *Jury instructions.* The trial judge instructed the jury on murder in the first degree, murder in the second degree, and voluntary manslaughter. The defendant objects to one sentence that was included in a summarizing portion of the judge's overall instructions: "If you find that the Commonwealth has proven that the defendant unlawfully killed the deceased using excessive force in self-defense, then you must find the defendant not guilty of murder, and you should return a verdict of guilty of manslaughter." According to the defendant, this sentence directed the jury to look at only the evidence of self-defense that was presented by the Commonwealth, and to ignore the defendant's claim and the supporting evidence presented by him that he had used excessive force in self-defense. The thrust of the defendant's argument is not clear, but he appears to contend that insofar as he used excessive force in self-defense as an "affirmative defense" to murder in the first degree, the challenged sentence effectively deprived the defendant of his defense.[3] Because the defendant did not object to the instruction at trial, we review the instruction for a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Niemic*, 427 Mass. 718, 720 (1998).

To obtain a conviction of murder "[w]here the evidence raises

---

[3]The defendant also argues that the sentence relieved the Commonwealth of its burden to disprove his affirmative defense. We find nothing in the sentence that shifts the Commonwealth's burden.

a question of self-defense, the burden is on the government to prove beyond a reasonable doubt that the defendant did not act in self-defense." *Commonwealth* v. *Williams,* 450 Mass. 879, 882 (2008). To establish that the defendant did not act in proper self-defense, the Commonwealth must prove at least one of the following propositions beyond a reasonable doubt: (1) the defendant did not have a reasonable ground to believe, and did not believe, that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force; or (2) the defendant had not availed himself of all proper means to avoid physical combat before resorting to the use of deadly force; or (3) the defendant used more force than was reasonably necessary in all the circumstances of the case. See *Commonwealth* v. *Souza,* 428 Mass. 478, 486 (1998), quoting *Commonwealth* v. *Torres,* 420 Mass. 479, 492 (1995). If the Commonwealth fails to prove either (1) or (2), but does prove (3) — that is, does prove beyond a reasonable doubt that in his exercise of self-defense the defendant used excessive force — then the jury must return a verdict of not guilty of murder and would be warranted in returning a verdict of guilty of voluntary manslaughter. See *Commonwealth* v. *Little,* 431 Mass. 782, 787 (2000).

The judge's instructions accurately reflected the law on this point. In discussing manslaughter, the judge began by explaining that certain mitigating circumstances can reduce the crime of murder to manslaughter — if a person kills another in the heat of passion, or by sudden combat, or by using excessive force in self-defense. He further explained that it is up to the Commonwealth to prove beyond a reasonable doubt that none of these mitigating circumstances is present in order to prove the crime of murder. His explanation of the third mitigating circumstance — use of excessive force in self-defense — immediately preceded the summarizing portion of the instructions that contains the sentence challenged by the defendant.[4]

The disputed sentence was not misleading in the way suggested by the defendant. Our jury instructions make no distinction between evidence presented by the Commonwealth and

---

[4]The summarizing portion of the instruction stated as follows:

"So, to sum up, in order to prove murder, the Commonwealth is

evidence presented by the defendant. See *Commonwealth* v. *Moreira*, 385 Mass. 792, 796 (1982) ("it is inappropriate to instruct the jury on the burden of production because such a matter lies outside the function of the jury"). The jury could not have distinguished between evidence that was presented by the Commonwealth and evidence presented by the defendant. The defendant did not testify, most witnesses were questioned by both the defendant's trial counsel and the prosecutor, and evidence in support of the defendant's position was elicited from witnesses called by both the defendant and the Commonwealth. The judge also explained that the jury could consider any piece of evidence on any issue to which the jury deemed it relevant (as long as the evidence was admitted without a limiting instruction). The sentence challenged by the defendant did not instruct the jury to ignore any evidence or theories presented by the defendant, and did not lessen the defendant's ability to assert that he used excessive force in self-defense to mitigate the charge of murder.

Although the sentence is not erroneous, it has a potential for confusion when viewed in isolation.[5] However, when reviewing a judge's instructions to a jury, we do not consider phrases in isolation, but rather "[w]e evaluate the instruction as a whole,

---

required to prove beyond a reasonable doubt that the defendant committed an unlawful killing with malice. If, after your consideration of all the evidence, you find that the Commonwealth has proven beyond a reasonable doubt the elements of murder, except that the Commonwealth has not proven beyond a reasonable doubt the absence of the mitigating circumstances of heat of passion or sudden combat, then you must find the defendant not guilty of murder and you should return a verdict of guilty of manslaughter. *If you find that the Commonwealth has proven that the defendant unlawfully killed the deceased using excessive force in self-defense, then you must find the defendant not guilty of murder, and you should return a verdict of guilty of manslaughter.* Finally, if the Commonwealth has failed to prove that the defendant unlawfully killed Francis Sullivan, then your verdict shall be not guilty." (Emphasis supplied.)

[5]Considered by itself the language, "If you find that the Commonwealth has proven that the defendant unlawfully killed the deceased using excessive force in self-defense," may suggest that the jury can expect the Commonwealth to prove "excessive force in self-defense" as a single element. In fact, the Commonwealth is generally attempting to disprove self-defense while at the same time proving, in the alternative, that if the defendant did try to act in self-defense, the force he used was excessive.

looking for the interpretation a reasonable juror would place on the judge's words." *Commonwealth* v. *Niemic*, 427 Mass. at 720, quoting *Commonwealth* v. *Trapp*, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996). "We 'do not scrutiniz[e] bits and pieces removed from their context.' *Commonwealth* v. *Perez*, 390 Mass. 308, 313 (1983) . . . . '[T]he adequacy of instructions must be determined in light of their over-all impact on the jury.' " *Commonwealth* v. *Niemic*, *supra*, quoting *Commonwealth* v. *Galford*, 413 Mass. 364, 371-372 (1992), cert. denied, 506 U.S. 1065 (1993). The instruction in this case accurately described excessive force in the context of self-defense, and the disputed sentence is only the summation of that lengthy description. The judge repeatedly explained that the Commonwealth alone bore the burden of proving every element of the crimes charged beyond a reasonable doubt. When considered in the context of an over-all instruction that otherwise provided a clear and accurate description of the law, the disputed sentence could not have misled the jurors. See, e.g., *Commonwealth* v. *Lynch*, 439 Mass. 532, 543-544, cert. denied, 540 U.S. 1059 (2003) (erroneous instruction, read in context of otherwise correct charge, would not have been misunderstood by jurors); *Commonwealth* v. *Niemic*, *supra* at 721-722 (same); *Commonwealth* v. *Torres*, 420 Mass. at 490-491 (same). Cf. *Commonwealth* v. *Acevedo*, 427 Mass. 714, 717 (1998) (repeated erroneous instruction required new trial because "center of gravity" of instruction was "strongly on the side of misstatement").

3. *The defendant's decision not to testify.* In his motion for a new trial the defendant argued that trial counsel provided ineffective assistance because he did not advise him of his right to testify, and instead told him he would not testify.[6] In support of his claim, the defendant submitted an affidavit, seven years after the trial had concluded, in which he asserted those facts.

---

[6]The defendant adds to his ineffective assistance claim by contending that trial counsel failed to invest sufficient time in the case and failed to inform the defendant of his intended course of action. The judge, in denying the motion for a new trial, found no evidence that trial counsel had failed to prepare sufficiently, and the defendant points to no specific failures of his trial counsel in this regard. Our own review of the record indicates that trial counsel was well prepared for trial, that in fact his careful preparation allowed him to advance a number of successful objections to prejudicial evidence offered by the Commonwealth, that he presented a qualified expert witness with whose testimony

The defendant's motion was denied because the judge did not credit the affidavit, describing it as "very late and self-serving." The judge relied instead on trial counsel's specific statements, made during the trial, that he had advised the defendant of his rights and discussed the option of testifying with both the defendant and the defendant's mother, and that the defendant chose not to testify. The defendant argues that the judge's failure to credit the affidavit was an abuse of discretion because a defendant's waiver of his right to testify should be reviewed under a stricter standard than that applied by the judge in this case. In particular, the defendant suggests that the judge should have informed the defendant about his right to testify, rather than relying on the assurances of defense counsel.

The defendant's argument is without merit. A trial judge need not engage in a colloquy with the defendant to determine that the defendant has knowingly and intelligently waived his right to testify. "[S]uch a colloquy is neither constitutionally required nor appropriate to the fair management of a trial." *Commonwealth v. Hennessey*, 23 Mass. App. Ct. 384, 388 (1987). "Because of the delicate balance between a defendant's right to testify on his own behalf and his equally fundamental right not to testify . . . [s]uch a colloquy might give the defendant the impression that he was being urged by the judge to testify . . . ." *Commonwealth v. Freeman*, 29 Mass. App. Ct. 635, 641 (1990). The judge appropriately relied on trial counsel's representations at the trial that he had advised his client of his right to testify. The judge also acted well within his discretion when he chose not to credit the defendant's affidavit. See *Commonwealth v. Grant*, 426 Mass. 667, 673 (1998).

4. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record and find no reason to exercise our authority under G. L. c. 278, § 33E, to reduce the defendant's conviction or order a new trial.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

he was very familiar, and that he presented a thorough and cogent defense. The defendant's generalized claim of ineffective assistance lacks merit.