# United States Court of Appeals
## For the First Circuit

No. 09-1491

DEREK GLACKEN,

Petitioner, Appellant,

v.

THOMAS DICKHAUT, Superintendent,
Souza Baranowski Correctional Facility,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lipez, Stahl and Howard,
Circuit Judges.

Joseph J. Balliro, Jr., and Balliro & Mondano, on brief for appellant.
Martha Coakley, Attorney General and Anne M. Thomas, Assistant Attorney General, Criminal Bureau, on brief for appellee.

November 3, 2009

**HOWARD**, **Circuit Judge**. Following a jury trial in Massachusetts Superior Court, Derek Glacken ("Glacken") was convicted of first degree murder by reason of extreme atrocity or cruelty in the June 1996 stabbing death of Francis Sullivan. He was sentenced to life imprisonment. After Massachusetts' highest court affirmed his conviction[1], Glacken sought habeas corpus relief in federal district court. In his state-court appeal and in the federal court, Glacken argued that the trial court erroneously instructed the jury and that his attorney's performance was constitutionally inadequate. Ruling from the bench after a hearing in which only Glacken presented argument, the district court denied the petition.[2] Although we employ a different route to reach the same destination, we affirm the judgment of the court below.

## I.

The facts surrounding Glacken's conviction are not in dispute. We summarize them here only insofar as necessary to this opinion, borrowing extensively from the Supreme Judicial Court's ("SJC") opinion, where a more complete factual recitation can be found. Glacken, 883 N.E.2d at 1230-31.

On the night of June 13, 1996, Glacken and his friend, John Conte, had dinner and then visited several bars. At their

---

[1] Commonwealth v. Glacken, 883 N.E.2d 1228 (Mass. 2008).

[2] The hearing occurred and the petition was denied before the parties filed memoranda on the merits of the petition.

final stop, they met Sullivan and his friend, Wendy Pizzolo. At some point in the evening, Pizzolo told Conte that Sullivan was gay. The four stayed until closing, during which time Conte and Glacken had consumed approximately twelve beers each, and Sullivan at least six.

The group then went to Conte's house. Because Conte was romantically interested in Pizzolo, he asked Glacken to take Sullivan for a walk so that Conte could be alone with Pizzolo. Later, when Conte and Pizzolo went outside to look for the two men, Conte found a blood-covered Glacken, crouching in bushes, saying, "I just killed him." After continuing to look outside, Conte and Pizzolo returned to the house, where they found Glacken alone, behaving erratically, with blood on his back and neck. Soon after, Glacken spoke by phone to a mutual friend of his and Conte's, saying that he had stabbed Sullivan with Conte's knife after Sullivan made sexual advances toward him.

Responding to a call from a neighbor, the police later found Sullivan's body in the middle of the street. A trail of blood indicated that he had traveled 266 feet from the point where he was stabbed. He had been stabbed at least thirty times, suffering wounds to his heart, lungs and liver. Conte's knife was found in a nearby lake, where Glacken said he had thrown it. When the police first arrived, Glacken told them that he and Sullivan had been attacked by two men, but no evidence was found to support

the assertion. Glacken was subsequently indicted on a charge of first degree murder.

Glacken's defense theory at trial was that the stabbing was a self-defense response to Sullivan's sexual advances. He did not testify in his own defense, but a forensic psychologist retained as a defense expert testified that Glacken had suffered post-traumatic flashbacks as he broke free from Sullivan's advances. According to this witness's testimony, the flashbacks caused Glacken to see two faces in place of Sullivan's: a person who tried to molest him as a youth, and a man who had beaten him a month before the stabbing.

The Commonwealth sought a conviction for first degree murder due to deliberate premeditation or extreme atrocity or cruelty. Glacken asked the jury to return a manslaughter verdict, on the grounds that he had used excessive force in self-defense. The trial judge instructed the jury on first degree murder, second degree murder, and manslaughter. With respect to Glacken's defense theory, the court instructed the jury that if the Commonwealth proved Glacken killed Sullivan with excessive force in self-defense, then a manslaughter verdict should be returned. Although the jury rejected the Commonwealth's theory of premeditation, it convicted Glacken of murder by extreme atrocity or cruelty, implicitly rejecting the self-defense theory.

At issue is the following statement the trial judge made to "sum up" the possible verdicts: "If you find that the Commonwealth has proven that the defendant unlawfully killed the deceased using excessive force in self-defense, then you must find the defendant not guilty of murder, and you should return a verdict of guilty of manslaughter." Glacken argues that this sentence effectively deprived him of his affirmative defense by failing to instruct the jury that it may not reject self-defense evidence simply because it was offered by the defendant. In other words, the quoted portion of the instruction allegedly directed the jury to look only at the evidence of self-defense offered by the prosecution. Glacken did not object to the instruction at trial.[3]

---

[3]The entire instruction was spread over sixty transcript pages. The disputed sentence was part of the following summary:

> So, to sum up, in order to prove murder, the Commonwealth is required to prove beyond a reasonable doubt that the defendant committed an unlawful killing with malice. If, after your consideration of all the evidence, you find that the Commonwealth has proven beyond a reasonable doubt the elements of murder, except that the Commonwealth has not proven beyond a reasonable doubt the absence of mitigating circumstances of heat of passion or sudden combat, then you must find the defendant not guilty of murder and you should return a verdict of guilty of manslaughter. If you find that the Commonwealth has proven that defendant unlawfully killed the deceased using excessive force in self-defense, then you must find the defendant not guilty of murder, and you should return a verdict of guilty of manslaughter. Finally, if the Commonwealth has failed to prove that the defendant unlawfully killed Francis Sullivan, then your verdict shall be not guilty.

In his state-court appeal, Glacken raised both the jury instruction issue and an ineffective assistance of counsel claim alleging that he was not advised of his right to testify. As noted, the SJC affirmed the conviction. Because Glacken did not object to the instruction at trial, the SJC reviewed it under a "substantial miscarriage of justice" standard. Glacken, 883 N.E.2d at 1232 (citing Commonwealth v. Niemic, 696 N.E.2d 117 (Mass. 1998)). In rejecting Glacken's ineffective assistance of counsel claim,[4] the SJC affirmed the trial court's balancing of statements made by defense counsel during trial that indeed he had advised Glacken of his rights against a conflicting affidavit submitted by Glacken seven years after the trial stating the opposite.

**II.**

Glacken's habeas petition claimed that the quoted instruction violated his due process rights to a fair trial by precluding the jury from considering his defense and that his trial counsel's performance was constitutionally deficient. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court shall not grant a petition for habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the state court decision: 1) "was contrary to, or involved

---

[4]Procedurally speaking, the SJC was reviewing the trial court's denial of Glacken's motion for a new trial, based on the ineffective assistance claim.

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or 2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see O'Laughlin v. O'Brien 568 F.3d 287, 298 (1st Cir. 2009).

The district court orally rejected Glacken's due process claim, stating that AEDPA prevented consideration of Glacken's theory because it depended on an "evolving concept" of due process, rather than on any particular Supreme Court holding. The district court also found that it was bound by the SJC's finding that trial counsel's performance met constitutional standards. We review de novo the district court's decision to grant or deny a habeas petition under 28 U.S.C. § 2254. Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006).

## III.

Before turning to the substance of Glacken's petition, we first address the government's argument that habeas review is precluded because the jury instruction claim was procedurally defaulted. It is well-settled that we may not consider state court decisions on habeas review if the decision rests on independent and adequate state grounds. Obershaw v. Lanman, 453 F.3d 56, 67-68 (1st Cir. 2006)(citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). One such ground is a state court's finding that a claim

-7-

is forfeited due to a failure to object at trial, which constitutes an independent and adequate ground "so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground." Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006). Here, we have no trouble determining that the SJC consistently applies the rule that contemporaneous objection to a jury instruction is necessary to avoid forfeiture. See Niemic, 696 N.E.2d at 120; Commonwealth v. Wright, 584 N.E. 2d 621, 624 (Mass. 1992); see also Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002) ("The SJC regularly enforces the rule that a claim not raised is waived."). Equally clear is that the SJC did not waive this rule here. Glacken, 883 N.E.2d at 1232.

The default may be excused only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. Obershaw, 453 F.3d at 68. Glacken's brief to us, however, does not address the default issue, other than in a single line in a footnote suggesting that the failure to object to the instruction at trial was the result of ineffective assistance of counsel.[5] To the extent this suggestion is an

---

[5]The failure to object is not mentioned within the section of Glacken's appellate brief addressing ineffective assistance of counsel.

attempt to demonstrate "cause" for the default, it is plainly insufficient. See United States v. Zannino, 893 F.2d 1, 17 (1st Cir. 1990) (issues adverted to in a "perfunctory manner," unaccompanied by some effort at developed argumentation are deemed waived).

Similarly, Glacken makes no attempt to demonstrate that default would result in a miscarriage of justice, a "narrow exception to the cause and prejudice imperative seldom to be used, and explicitly tied to a showing of actual innocence." Burks v. Dubois, 55 F.3d 712 (1st Cir. 1995); see Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999) (petitioner must show probability that no reasonable juror would have convicted him). Accordingly, we conclude that Glacken's jury instruction claim was procedurally defaulted, and we do not reach its merits.[6]

## IV.

Glacken's claim of ineffective assistance of counsel is premised on allegations that his trial counsel interfered with his ability to testify by not only failing to inform him of his right to do so, but also telling him that he would not testify.

---

[6]Glacken quotes extensively from Waddington v. Sarasaud, 129 S.Ct. 823 (2009), to support his jury instruction claim. That case is inapposite, however, as it contains no suggestion of procedural default.

It is beyond dispute that a defendant's right to testify in his own defense cannot be waived by counsel acting alone. Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007). While Glacken's brief relies on the affidavit he submitted to the state court in support of his motion for new trial, he makes no mention of the contrary statements made by defense counsel at trial. The SJC concluded that "The [trial] judge appropriately relied on trial counsel's representations at the trial that he had advised his client of his right to testify. The judge also acted well within his discretion when he chose not to credit the defendant's affidavit." Glacken, 883 N.E.2d at 1234-35

In addition, Glacken does not cite Strickland v. Washington, 466 U.S. 668 (1984), or any other case setting out the legal standard for evaluating ineffective assistance claims. Nor does he place the SJC's actions in the context of our limited power of review, failing to indicate how the SJC's decision on this issue was contrary to, or an unreasonable application of, clearly established federal law; or was based on an unreasonable determination of the facts. While we could consider this claim waived due to lack of developed argument, see Zannino, 893 F.2d at 17, we briefly address its substance. Glacken's argument boils down to restating that two parties -- he and his attorney -- provided differing versions of events. In such a case, "the state trial judge's implicit credibility determinations, adopted by [an

-10-

appellate court], are exactly the type of factual determinations to which we defer, at least short of any indication of serious error." <u>Teti</u> v. <u>Bender</u>, 507 F.3d 50, 59 (1st Cir. 2007)(<u>citing</u> <u>Rice</u> v. <u>Collins</u>, 546 U.S. 333, 341-42 (2006)).  No more need be said about Glacken's futile argument.

The judgment of the district court is **<u>affirmed.</u>**