**Carlos RODRIGUEZ-ORELLANA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civil No. 13–01745 (ADC) [Related to Crim. Nos. 07–547–3, 12–404 (ADC) ]

United States District Court, D. Puerto Rico.

Signed 02/10/2017

---

Eleonora C. Marranzini, Federal Public Defender's Office, Hato Rey, PR, Franco Lorenzo Perez–Redondo, Federal Public

Defender—District of Puerto Rico, San Juan, PR, for Petitioner.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Respondent.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief United States District Judge

Petitioner, Carlos Rodríguez–Orellana ("petitioner"), submitted a federal motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 ("the motion"), on September 19, 2013. **ECF No. 1.** In the motion, petitioner appears to raise the following claims: (1) in light of the U.S. Supreme Court's decision in *Alleyne v. United States*, 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), this Court should reconsider three aspects of his sentence; specifically (a) his acceptance of responsibility for three but less than five kilograms of cocaine, (b) his guilty plea to the offense charged in Criminal Case No. 12–00404, and (c) a two-level enhancement to his base offense level due to the foreseeability of firearms (collectively, "Claim 1"); and (2) the two counts to which he pled guilty constituted "multiplicitous [*sic*]" convictions because they were both based on him being guilty of a conspiracy where the use of firearms was foreseeable ("Claim 2"). *Id.* at 5–11.

Respondent, the United States of America, filed a response in opposition to the § 2255 motion ("the response"), requesting that the Court deny the motion because defendant had entered a knowing and voluntary guilty plea to the offenses challenged in the § 2255 motion. **ECF No. 5** at 4–5. Petitioner filed a reply to the response ("the reply"), alleging, for the first time, that his trial counsel (a) did not advise him that his guilty plea would result in any sentencing enhancements, (b) advised him that the parties would recommend that he be sentenced to the low-end of the sentencing guideline range, (c) did not advise him that the sentencing court had no obligation to follow the parties' sentencing recommendations, and (d) advised that he would be subject to a 10–year sentence for an offense charged in Criminal Case No. 07–00547. **ECF No. 12** at 2–7. Petitioner argued that, if he had been properly advised, he would not have accepted the guilty plea. *Id.* at 2–3.

For the reasons set forth below, the Court **DENIES** the § 2255 motion (**ECF No. 1**), and **DISMISSES** the case.

## I. Factual and Procedural History

On June 3, 2008, in Criminal Case No. 07–00547, an eight-count superseding indictment was returned against petitioner and 120 co-defendants, charging petitioner, in pertinent part, with, from in or about January 2000 up until the return of the superceding indictment, conspiring to possess with intent to distribute 1 kilogram or more of heroin, 50 grams or more of crack cocaine, 5 kilograms or more of cocaine, and 100 kilograms or more of a substance containing a detectable amount of marijuana within 1,000 feet of a housing facility owned by a public housing authority ("Count 1 of No. 07–00547"). **Case No. 3:07–cr–00547, ECF No. 1007** at 1–11. Petitioner was further charged as a leader within the conspiracy because he was third in command, became the on-site leader of the drug trafficking organization, and owned a heroin, cocaine, and crack cocaine distribution point. *Id.* at 15. On May 18, 2012, in Criminal Case No. 12–00404, petitioner was charged in a one-count information with knowingly possessing a machine gun on or about December 20, 2011 ("Count 1 of No. 12–00404"). **Case No. 3:12–cr–00404, ECF No. 2.**

On the same day as the return of the one-count information in Criminal Case No. 12–00404, petitioner pled guilty to Count 1 of No. 07–00547 and Count 1 of

No. 12–00404, pursuant to a plea agreement with respondent. **Case No. 3:07–cr–00547, ECF No. 5286.** In pertinent part, petitioner acknowledged or agreed to the following in the plea agreement. For Count 1 of No. 07–00547, he faced a minimum term of imprisonment of 5 years and a maximum term of 80 years. *Id.* at ¶ 2. For Count 1 of No. 12–00404, he faced a maximum term of imprisonment of ten years. *Id.* The U.S. Sentencing Guidelines were advisory. *Id.* at ¶ 3.

Further, as to Count 1 of No. 07–00547, petitioner's base offense level was 30 as he was accepting responsibility for at least 3.5 but less than 5 kilograms of cocaine. *Id.* at ¶ 7. He would receive a 2–point enhancement to his base offense level for the offense taking place in a protected location, a 4–point enhancement for his role in the offense as a leader, a 2–point enhancement due to the foreseeability of firearms, and a 3–point reduction for acceptance of responsibility, resulting in a total offense level of 35. The parties did not stipulate as to petitioner's criminal history category, but agreed that if it was a category I, the sentencing guideline range for Count 1 of No. 07–00547 would be 168 to 210 months' imprisonment, and, if a category II, the range would be 188 to 235 months' imprisonment. For Count 1 of No. 12–00404, petitioner's base offense level was 20, and after a 3–point reduction for acceptance of responsibility, his total offense level was 17. The parties again did not stipulate to petitioner's criminal history category, but agreed that if it was a category I, the sentencing guideline range would be 24 to 30 months' imprisonment, and, if a category II, 27 to 33 months' imprisonment. *Id.*

The parties agreed to recommend that petitioner be sentenced, as to Count 1 of No. 07–00547, to a term of imprisonment of 210 months' imprisonment if his criminal history category was I, and, as to Count 1 of No. 12–00404, to 30 months' imprisonment. *Id.* at ¶ 8. The parties further agreed to recommend that the above sentences be imposed to run concurrently. Petitioner acknowledged that the sentencing Court was not bound by the parties' recommendations, and that the Court could sentence petitioner to any amount of time up to and including the statutory maximum sentence for the offenses to which he had pled guilty. *Id.* Petitioner also stated that he was satisfied with his trial counsel's legal assistance, that he had consulted with counsel and fully understood his rights, that he had carefully reviewed every part of the plea agreement with his attorney, and that he fully understood the plea agreement and voluntarily agreed to it. *Id.* at ¶ 12 & at 11. Petitioner signed the plea agreement and the accompanying statement of facts in three separate places, and initialed every page of the agreement and statement of facts including all handwritten changes. *See generally* **Case No. 3:07–cr–00547, ECF No. 5286.**

At a change-of-plea hearing on the same date, petitioner again agreed to plead guilty to Count 1 of No. 07–00547 and Count 1 of No. 12–00404. **Case No. 3:07–cr–00547, ECF Nos. 5288, 5301.** In pertinent part, petitioner testified that he had discussed pleading guilty with his attorneys, including discussing all of the terms of the plea agreement, which had been translated and he understood. **Case No. 3:07–cr–00547, ECF No. 6173** at 7:4–15, 22:7–20. Petitioner further testified that he was satisfied with his attorneys' services. *Id.* at 7:16–21, 23:21–24:2. U.S. Magistrate Judge Marcos López informed petitioner of his rights, including his right to a jury trial, and petitioner stated that he still wished to enter a guilty plea. *Id.* at 15:9–18:14. Petitioner acknowledged his understanding that sentencing would be left to the discretion of the Court, and that he could not withdraw his guilty plea merely because the Court imposed a sentence up

to the statutory maximum penalty. *Id.* at 18:25–19:13, 21:22–22:6, 30:12–17. Petitioner further testified that no one had promised him a specific sentence. *Id.* at 19:18–22, 31:17–20.

The Magistrate Judge read the charges to which petitioner was seeking to plead guilty, and petitioner testified that he had committed those offenses. *Id.* at 24:3–26:3. The Magistrate Judge informed petitioner that he had agreed to a stipulated drug amount of at least 3.5 but less than 5 kilograms of cocaine, which meant that he faced a sentence of 5 to 80 years' imprisonment with respect to Count 1 of No. 07–00547. *Id.* at 26:18–27:8. As to Count 1 of No. 12–00404, petitioner was informed that he faced a statutory maximum term of ten years' imprisonment. *Id.* at 27:10–17. Petitioner acknowledged that he understood the terms of imprisonment he faced. *Id.* at 27:9, 18. Counsel for respondent then explained the recommended sentencing guidelines from the plea agreement, including a two-level increase due to the offense being committed within a protected location, a four point increase for petitioner being a leader in the drug conspiracy, and a two point increase for possession of firearms. *Id.* at 28:3–16. Counsel for respondent further stated that the parties agreed to recommend a sentence of 210 months' imprisonment, as to Count 1 of No. 07–00547, if petitioner was a criminal history category of I, and for the sentence related to Count 1 of No. 12–00404 to run concurrently. *Id.* at 29:8–18. Petitioner testified that he understood the sentencing guideline calculations as stated, and that he understood that the same were not binding on the sentencing Court. *Id.* at 30:2–11.

Counsel for respondent then provided a factual basis for the guilty plea, stating, *inter alia*, that, during different times of the conspiracy, petitioner possessed firearms in order to protect the drug distribution business, and, during his arrest, petitioner admitted to being in possession of a fully automatic pistol. *Id.* at 33:3–36:13. Petitioner testified that respondent's summary of the facts was true, and that he wished to plead guilty to Count 1 of No. 07–00547 and Count 1 of 12–00404. *Id.* at 36:14–24. Magistrate Judge López then accepted petitioner's guilty pleas, finding them to be knowledgeable and voluntary. *Id.* at 36:25–37:11.

On October 12, 2012, petitioner was sentenced to 210 months' imprisonment on Count 1 of No. 07–00547 and 120 months' imprisonment as to Count 1 of No. 12–00404, with the sentences to be served concurrently. **Case No. 3:07–cr–00547, ECF No. 5400.** On the same date, judgment of conviction was entered. **Case No. 3:07–cr–00547, ECF No. 5403.** At the sentencing hearing,[1] in computing petitioner's total offense level for Count 1 of No. 07–00547, the Court explained that his base offense level was 30, he was subject to a 2-level increase for the drug conspiracy taking place in a protected location, he was subject to a 2-level increase for being arrested in possession of a loaded automatic pistol and for possessing firearms during the conspiracy, he was subject to a 4-level increase for being a leader of the drug trafficking organization, and he received a 3-level reduction for admitting responsibility; resulting in a total offense level of 35. **Case No. 3:07–cr–00547, ECF No. 5510 at 9:7–10:6.** Petitioner's criminal history was found to be a category I, which resulted in a guideline imprisonment range of 168 to 210 months' imprisonment. *Id.* at 10:7–8. The Court subsequently sentenced petitioner to 210 months' imprisonment as to Count 1 of No. 07–00547, and to 120 months' imprisonment on Count 1 of No. 12–00404, with the sentences to be served concurrently. *Id.* at 11:18–23. The Court

---

1. An official court interpreter was present at the sentencing hearing to assist petitioner.

also advised petitioner that he had four-teen days to file a notice of appeal of his judgment of conviction. *Id.* at 14:14–22. After defense counsel noted that the 120–month sentence for Count 1 of No. 12–00404 represented a departure from the sentencing guideline, the Court stated there were sufficient grounds for a departure because the offense involved a machine gun and petitioner was arrested in possession of the weapon while he was a fugitive and under indictment. *Id.* at 14:23–16:8. The Court also noted, that in any event, the sentencing were concurrent.

Petitioner did not file a notice of appeal of his judgment of conviction and sentence. Instead, on October 2, 2013, petitioner filed the instant motion under 28 U.S.C. § 2255, and respondent does not challenge its timeliness. *See generally* **ECF No. 5.**[2]

## II. Legal Standard

A federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner requesting post-conviction relief must show that his sentence "reveal[s] fundamental defects which, if uncorrected, will result in a complete miscarriage of justice." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (quotations, citation, and alterations omitted). The burden to establish such defects falls on petitioner. *Id.*

Federal courts may grant a hearing to entertain the claims raised in a collateral attack. 28 U.S.C. § 2255(b).

However, a hearing is unnecessary when the section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." *United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993) (quotation and citation omitted). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'" *Id.* at 226 (quoting *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir. 1984) (internal quotation marks omitted)).

## III. Discussion

Before addressing the potential merit of the claims raised in petitioner's motion, there are certain procedural issues that need to be addressed initially; namely, petitioner's failure to contest his sentence on direct appeal. In the motion, petitioner raises purely substantive challenges to the sentences he received, as well as an apparent argument that his two sentences constituted multiple convictions based on the same fact. *See* **ECF No. 1.** Because petitioner failed to file a direct appeal, ordinarily, his claims would be procedurally defaulted absent a showing of cause and prejudice for the default. *See Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (explaining that procedural default occurs when a petitioner fails to raise a claim in a timely manner at trial or on direct appeal). Petitioner makes no argument that there is cause and prejudice for his failure to file a direct appeal of his sentences.[3] *See generally* **ECF Nos. 1, 12.**

---

**2.** Nor does the Court discern any reason to challenge the motion's timeliness, given that it was filed less than one year after petition-er's judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1).

**3.** In his reply, petitioner asserts, vaguely, that

Nonetheless, as more fully discussed *infra*, petitioner not only did not raise these claims at trial, he accepted the sentencing enhancements he now contests in executing the plea agreement. However, at least with respect to petitioner's claims that the Court should reconsider his sentences, those claims are premised on *Alleyne*—a case that was decided after the sentencing hearing in this case. Providing petitioner an enormous benefit of the doubt, arguably, an intervening change in the law may constitute cause for a procedural default. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (explaining that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause) (quotation omitted).

█ Even assuming cause for the procedural default exists, no amount of doubtful benefit can help petitioner establish prejudice. First, and most important, *Alleyne* has not been made retroactive to cases on collateral review. *Arroyo v. United States*, Case No. 13–2470 (1st Cir. Mar. 13, 2014) (unpublished); *see also Jeanty v. Warden, FCI–Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014); *In re Mazzio*, 756 F.3d 487, 489–90 (6th Cir. 2014); *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014); *In 're Payne*, 733 F.3d 1027, 1029–30 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013); *United States v. Redd*, 735 F.3d 88, 91–92 (2d Cir. 2013). Thus, that decision is not applicable here. *See Tyler v. Cain*, 533 U.S. 656, 663, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001) (holding that a "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive.").

Second, even if *Alleyne* was somehow applicable here, it would not be relevant, as petitioner miscomprehends the holding therein. Petitioner cites to *Alleyne* as supporting his contention that the Court should reconsider (a) the sentences that he received because *Alleyne* has provided sentencing courts with greater discretion, (b) the imposition of a sentencing enhancement for the foreseeability of firearms, and (c) the amount of drugs to which he accepted responsibility. **ECF No. 1** at 5–9. In *Alleyne*, however, a plurality of the Supreme Court held that facts that increase a mandatory minimum sentence are elements of an offense that must be submitted to a jury and found beyond a reasonable doubt. *Alleyne*, 133 S.Ct. at 2158. Contrary to petitioner's apparent contention, therefore, *Alleyne* has not provided the Court with any greater discretion than it had when it sentenced petitioner originally. As a result, *Alleyne* would not cause the Court to reconsider the sentences that it imposed in petitioner's underlying criminal cases.

█ As for the sentencing enhancement petitioner received due to the foreseeability of firearms and the base offense level he was allotted due to the drug amount for which he accepted responsibility, *Alleyne* could pertain to those facts, but only if they increased the statutory mandatory minimum sentence to which he was subject. By accepting responsibility for at least 3.5 but less than 5 kilograms of cocaine, the statutory mandatory minimum sentence was set at five years' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(B). Therefore, petitioner's mandatory minimum sentence was affected by this fact. The problem for petitioner is that using this fact to increase his manda-

---

his trial counsel did not object to the sentencing enhancements that he received, but, even if trial counsel's failure to object could consti-

tute cause, this would still not excuse the failure to raise these objections on direct appeal.

tory minimum sentence wholly complied with *Alleyne* because he admitted the fact in agreeing to plead guilty. *See Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (explaining that the statutory maximum sentence that can be imposed is one based solely on the facts reflected in a jury verdict or admitted by the defendant); *see also* **Case No. 3:07–cr–00547, ECF No. 5286 at ¶ 7**. The same reasoning applies to the firearm-foreseeability enhancement, even though that fact did not increase petitioner's minimum or maximum sentence. Notably, in the plea agreement, petitioner agreed that use of a firearm was foreseeable with respect to Count 1 of No. 07–00547. *See* **Case No. 3:07–cr–00547, ECF No. 5286 at ¶ 7**.

In summary, the arguments raised in Claim 1 are procedurally defaulted. Moreover, because the imposition of sentence on Count 1 in No. 07–00547 and Count 1 in No. 12–00404 complied with *Alleyne*, and because *Alleyne* did not provide the Court with any greater discretion to reconsider the above sentences, the arguments raised in Claim 1 are meritless. As a result, Claim 1 is **DENIED**.

As for Claim 2, petitioner again provides no cause or prejudice for his failure to raise this argument at the sentencing hearing or on direct appeal. Nonetheless, even if the Court were to ignore this procedural barrier, petitioner's argument is meritless. Although the argument is not perfectly clear, petitioner appears to argue that, in receiving both an enhancement to his base offense level for Count 1 of No. 07–00547 and in being convicted of knowingly possessing a machine gun in No. 12–00404, he suffered "multiplicitous [*sic*]" convictions and/or "two firearm punishments." *See* **ECF No. 1 at 8–12**. In this light, it appears that petitioner is raising some form of double jeopardy argument. This is simply not the case.

Petitioner was convicted in No. 07–00547 for conspiring to possess with intent to distribute controlled substances within 1,000 feet of a public housing facility, while in No. 12–00404 he was convicted of knowingly possessing a machine gun. **Case No. 3:07–cr–00547, ECF No. 5286 at ¶ 1**. These offenses violated different statutes, were not based on the same facts, and clearly require different elements in order to convict, thus, to the extent that petitioner argues it, there is no double jeopardy concern with respect to the convictions. *See United States v. Serino*, 835 F.2d 924, 930 (1st Cir. 1987) (explaining that, to determine whether an indictment is multiplicious, the court must ask if each statutory provision " 'requires proof of a fact which the other does not.' ") (quoting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

As for petitioner allegedly receiving two firearm punishments, at the sentencing hearing, the Court noted that petitioner's possession of a machine gun in Count 1 of No. 12–00404 "was considered to be part of [petitioner's] possession of weapons in relation to drug trafficking crimes." **Case No. 3:07–cr–00547, ECF No. 5510 at 8:17–22**. This was entirely permissible. Possession of the machine gun was the substantive offense in No. 12–00404, thus, obviously, some form of punishment related to the firearm was mandated by statute in light of petitioner's guilty plea to that offense and his admissions in the plea agreement. *See* 18 U.S.C. § 924(a)(2) (setting imprisonment and/or a fine as punishment for knowingly possessing a machine gun) (cross-referencing 18 U.S.C. § 922(*o*)). With respect to Count 1 of No. 07–00547, consideration of petitioner's possession of the machine gun, in part, to enhance petitioner's offense level did not constitute *punishment* for that possession—at least not for double jeopardy purposes. *See Witte v. United States*, 515 U.S. 389, 399–

400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (holding that the use of uncharged criminal conduct to enhance a sentence within the range authorized by statute does not constitute punishment for the uncharged conduct); *United States v. Montero–Díaz*, 173 Fed.Appx. 7, 9 (1st Cir. 2006) (rejecting an appellant's argument that a sentencing court's application of U.S.S.G. § 2L1.2(b) violated double jeopardy because it imposed an additional punishment for a prior state conviction for which the appellant had been previously sentenced) (citing *Witte* ). In any event, in the plea agreement, petitioner acknowledged that he possessed firearms during different times of the conspiracy in order to protect the drug distribution business, and the Court relied on this admission in imposing the two-level sentencing enhancement for firearms being foreseeable. **Case No. 3:07–cr–00547, ECF No. 5286 at 13; Case No. 3:07–cr–00547, ECF No. 5510 at 9:19–22.** Thus, reliance on petitioner's possession of the machine gun at the time of his arrest was not the only basis for imposing the challenged enhancement, and the enhancement would have been imposed irrespective of the machine gun possession.

As a result, because consideration of petitioner's possession of a machine gun did not violate double jeopardy, Claim 2 is rejected on the merits. Moreover, the claim has been procedurally defaulted without a showing of cause and prejudice for the same. As a result, Claim 2 is **DENIED.**

There is one final procedural matter to be discussed. In his reply (**ECF No. 12**), petitioner argues, for the first time, that he would not have accepted the plea agreement if he had known that it contemplated the enhancements imposed at sentencing. *Id.* at 2–3. He further appears to raise various examples of attorney ineffective assistance in that counsel failed to advise him, *inter alia*, that he would be subject to

a sentence at the high-end of his guideline range and failed to object to any of the enhancements at sentencing. *Id.* at 3–5. None of these arguments were made in the motion to vacate. *See generally* **ECF No. 1.** The closest petitioner came in the motion to suggesting that his guilty plea may have been unintelligent was when he stated that he "understood by pleading to [Count 1 of No. 12–00404] he accepted that the firearm was considered part of the offense conduct and should relieve him of any other enhancements as part of the conspiracy." *Id.* at 8. Petitioner, though, did not further develop this suggestion, and certainly did not argue that his incorrect alleged understanding meant that his guilty plea was invalid. Thus, the Court is not inclined to consider whether petitioner's guilty plea was unknowing or involuntary. *See Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009) (concluding that a habeas petitioner waived an argument to which he expended a single line in a footnote of his opening brief).

█ Nevertheless, even if the Court was so inclined, petitioner's plea agreement clearly and conclusively establishes that petitioner was more than fully aware of the sentencing enhancements that he alleges were unknown to him. Specifically, each of the sentencing enhancements imposed at trial was set forth in the plea agreement, and petitioner placed his initials on the page of the agreement in which those enhancements appeared. *See* **Case No. 3:07–cr–00547, ECF No. 5286 at ¶ 7 & at 5.** The same understanding rings true from the change-of-plea colloquy. Specifically, counsel for respondent stated that the parties had agreed to various sentencing enhancements, including a two point increase for possession of firearms. **Case No. 3:07–cr–00547, ECF No. 6173 at 28:8–16.** Petitioner testified that he understood the sentencing guideline calculations. *Id.* at 30:2–6. In this light, there would have been no basis for plea counsel to have objected

to a sentencing enhancement to which petitioner had already stipulated to in the plea agreement.

Next, the plea agreement put petitioner on ready notice that the parties' sentencing recommendation was precisely that—a recommendation—one which the Court could accept, reject, or alter upwards or downwards to the extent permitted by law. *Id.* at ¶ 8. The plea agreement also clearly stated that the parties' sentencing recommendation for Count 1 of No. 07–00547 was a term of imprisonment of 210 months—at the high end of the guideline range for that offense, assuming a criminal history category of I. *Id.* Petitioner initialed this page of the agreement as well, *id.*, thus, undermining his assertion that trial counsel told him that the parties would recommend a sentence at the low end of the guideline range. *See* **ECF No. 12** at 3. Furthermore, petitioner expressly acknowledged that he had read the plea agreement and carefully reviewed every part of it with his attorney. **Case No. 3:07–cr–00547, ECF No. 5286** at 11. In addition, the same understanding can be drawn from the change-of-plea colloquy. Specifically, counsel for respondent stated that the parties would be recommending a sentence of 210 months' imprisonment for Count 1 of 07–00547, and the Magistrate Judge repeatedly informed petitioner that the parties' sentencing recommendation was not binding on the Court. **Case No. 3:07–cr–00547, ECF No. 6173** at 18:25–19:13, 21:22–22:6, 29:8–12, 30:7–25. In this light, given the thorough contradiction provided by the plea agreement and the change-of-plea colloquy to each of petitioner's alleged instances of ineffective assistance of counsel and/or not knowing the terms of the plea agreement, the Court finds those allegations, at best, to be disingenuous and refuted by the record. As a result, to the extent that petitioner's apparent arguments of ineffective assistance of counsel and invalidity of his guilty plea

have not been waived by his failure to raise them in his motion to vacate, the Court rejects and **DENIES** them.

## IV. Certificate of Appealability

 Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, because Claims 1 and 2 are both procedurally defaulted and without merit, and, at essence, defendant seeks only a reduction in his sentence, the Court finds that he has failed to make a substantial showing of the denial of a constitutional right. In addition, to the extent that petitioner raises claims in his reply that were not raised in the motion to vacate, because those claims have been waived and, in any event, are conclusively refuted by the record, he has again failed to make a substantial showing of the denial of a constitutional right. As a result, a COA is **DENIED.**

## V. Conclusion

For the reasons discussed herein, petitioner is **DENIED** an evidentiary hearing and the § 2255 motion (**ECF No. 1**) is **DISMISSED WITH PREJUDICE.** Petitioner is **DENIED** a COA. The Clerk is instructed to enter judgment accordingly and **CLOSE** this case.

**SO ORDERED.**