COMMONWEALTH vs. CHRISTOPHER ROBERT KING.

Suffolk. April 7, 2011. - June 21, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Assault and Battery. Self-Defense. Evidence,* Self-defense. *Practice, Criminal,* Instructions to jury.

At the trial of a criminal complaint charging assault and battery, the judge's erroneous jury instruction on self-defense, which focused solely on the issue whether the force used was greater than necessary in the circumstances, did not create a substantial risk of a miscarriage of justice, where the defendant was not prejudiced by the incomplete instruction, given that the instruction, by omitting the other two factors, i.e., whether the defendant had reasonable concern for his safety and whether the defendant used all reasonable means to avoid physical combat, necessarily presumed that the Commonwealth failed to prove the absence of those factors. [83-90]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on November 29, 2006.

The case was tried before *Robert J. McKenna,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kathryn Karczewska Ohren* for the defendant.

*Elisabeth Martino,* Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. In 2007, a jury in the Central Division of the Boston Municipal Court Department convicted the defendant of assault and battery of the victim, Christopher Garden. G. L. c. 265, § 13A. He was sentenced to one year's probation. He appealed, arguing that the judge erred in instructing the jury on self-defense. The Appeals Court affirmed, *Commonwealth* v. *King,* 77 Mass. App. Ct. 194, 203 (2010), and we granted the defendant's application for further appellate review. Because we conclude that the error in the jury instruction on self-defense did not create a substantial risk of a miscarriage of justice, we affirm the defendant's conviction.

*Facts and background.* We recite the essential facts introduced by the Commonwealth and the defendant, reserving certain details for our discussion of the issue.

*The Commonwealth's case.* The Commonwealth's case was presented through the testimony of the victim, a witness, and a police sergeant. The victim was an employee of Kings, a bowling alley, bar, and restaurant in Boston. The restaurant and lounge are separated from the bowling alleys by a doorway. Every Monday night, Kings hosted "industry night" where employees of the hospitality industry of Boston gathered to socialize and to bowl for free. Kings had a bowling team; the victim was a member.

One week before the incident, the victim went into the lounge area of the restaurant and, on seeing a woman paying for the defendant's drinks, said to the defendant, "Don't make your bitch pay for your drinks." Words were exchanged, but the victim "removed [him]self from the situation." The victim did not threaten the defendant; he walked away because he did not want to endanger his job.

One week later the victim was bowling. He did not know that the defendant was there. After he finished bowling, the victim walked through the doorway into the lounge area. He denied having a glass in his hand at the time. Without warning, the defendant punched the victim in the face above his left eye. The victim stated that he did not know whether the defendant had anything in his hand when he punched him. Before the victim was taken to an ambulance, he apparently spoke to a responding police officer and said that he did not know what had happened. However, he testified that, after the punch, he remembered nothing until he woke up in an ambulance. He suffered injuries to his head and face, including fractures to his eye socket and face that required surgery. The extent of the injuries was introduced solely through the victim's testimony.

A hostess, who had been working at Kings for approximately one month, testified that, after she heard a woman scream, she went into the lounge area and saw the victim on the floor with shards from a broken glass all around him, as well as blood on the left side of his face, over his eyes, and on his forehead. She also saw the defendant standing a few tables away from the

victim, being restrained by some of his friends. After she dialed
911, she returned to the lounge and noticed that no tables, which
had been set complete with glassware, were overturned. The
broken glass that was on the floor was not the same as the
glasses that were used to set the tables. She noticed one table
where the chairs were pushed away as if people had been sitting
there.

Police spoke to the victim and others. A sergeant at the scene
testified that he read the defendant the Miranda warnings, after
which the defendant claimed he had been attacked by the victim
and several of his friends. The defendant did not tell the officer
that he had been punched by the victim or anyone else, but
stated "a couple of times that he was very sorry." The defend-
ant was not arrested at that time.[1]

The Commonwealth's theory was that, in retaliation for the
earlier exchange, the defendant hit the victim in the face with a
glass or with his fist.

*The defendant's case.* The defendant presented a different
version of events. The defendant and several of his coworkers
were at Kings for the Monday industry night when the victim
made his statement about paying for drinks to the defendant.
During that earlier incident, the defendant and his coworkers
told the victim to "get lost." The victim challenged the defend-
ant to a fight, even removing his jacket, but they did not fight.

On the evening of the incident, the defendant saw the victim
and made eye contact. According to the defendant, as he entered
through the door to the lounge, the victim was inside the lounge
about four feet away. The victim's "eyes lit up" when he saw
the defendant, but the defendant did not recall whether there
were words between them. The victim turned around to place a
glass on a table and came back "with his fist cocked," punch-
ing the defendant in the face. The defendant immediately
punched back, and the victim "stumbled on" and fell "off" a
table and "fell on his head pretty hard." On cross-examination,
the defendant denied that he told the police officer that he had

---

[1]The sergeant explained that, unless the assault and battery was committed
in the presence of a police officer, it is a nonarrestable misdemeanor. The
defendant was arrested after a complaint issued following a hearing before a
clerk magistrate.

been attacked by the victim and several of his friends. He did say that he told the officer that the victim had hit him first.

One coworker, Craig Hart, was in the lounge. His testimony corroborated the defendant's; he added that he saw the victim and the defendant engaged in a heated discussion.

Another coworker, Sean Griffin, testified that double swinging doors led into the lounge and that he was right behind the defendant as he was entering the lounge through one of the doors. He stated that the victim was standing in front of the doorway to the lounge, "block[ing] in" the defendant. Griffin testified that, after the victim put down a glass he had in his hand, the victim came at the defendant with a clenched fist. He did not state that the victim hit the defendant.

*Discussion.* Where nondeadly force is used, a defendant is entitled to a self-defense instruction if the evidence, viewed in the light most favorable to the defendant without regard to credibility, supports a reasonable doubt that (1) the defendant had reasonable concern for his personal safety; (2) he used all reasonable means to avoid physical combat; and (3) "the degree of force used was reasonable in the circumstances, with proportionality being the touchstone for assessing reasonableness." *Commonwealth* v. *Franchino*, 61 Mass. App. Ct. 367, 368-369 (2004), and cases cited. If the evidence warrants a self-defense instruction, the Commonwealth bears the burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense, by establishing that at least one of the three factors did not exist (i.e., that the defendant did not have reasonable concern for his safety, that he did not use all reasonable means to avoid physical combat, or that the force that was used was greater than necessary in all the circumstances of the case). *Commonwealth* v. *Glacken*, 451 Mass. 163, 167 (2008). "The jury must receive complete instructions from the trial judge, including an explanation of the proper factors to be considered in determining the issue of self-defense." *Commonwealth* v. *Shaffer*, 367 Mass. 508, 512 (1975), discussing *Commonwealth* v. *Kendrick*, 351 Mass. 203 (1966).[2]

---

[2]The factors to consider in determining the reasonableness of the force used, such as relative physical capabilities and means of escape, were set forth in *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966). Here, the jury were instructed on these factors. See *infra*.

Here, there is no dispute that the defendant was entitled to an instruction on self-defense or that the judge erred because he instructed the jury solely on whether the force that was used was greater than necessary in all circumstances:

> "Evidence in this case has been offered that the defendant acted in self-defense. In sum, a person may lawfully use reasonable force to defend himself from physical attack. Once evidence of self-defense is presented, the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. In other words, if you have a reasonable doubt whether the defendant acted in self-defense, your verdict must be not guilty. A person may use no more force than is reasonably necessary in all of these circumstances to defend himself or herself. Unreasonable or excessive force is force that is manifestly disproportionate under all of these circumstances.

> "The question as to how far a defendant could go in defending himself or herself is for you, the jury, to decide.

> "You may give [due] regard to the infirmity of human impulse and passions. In considering the reasonableness of the defendant's conduct, you may consider evidence of the relative physical capabilities of the individuals involved in the incident. You may also consider how many persons were involved in each side. You may also consider the availability of room to maneuver or the means of escape from the area in question. The Commonwealth must prove beyond a reasonable doubt that the defendant acted with excessive force. Bear in mind that the defendant does not have to prove anything. If there is evidence that he may have acted in self-defense, then the Commonwealth must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. If you determine that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt about whether or not the defendant acted in self-defense, your verdict must be not guilty."[3]

There was no objection.

---

[3] Instruction 9.260 of the Criminal Model Jury Instructions for Use in the

Where there is an erroneous jury instruction we review the entire charge to the jury to determine the interpretation a reasonable jury would place on the judge's words. See *Commonwealth v. Williams*, 450 Mass. 879, 882 (2008), quoting *Commonwealth v. Niemic*, 427 Mass. 718, 720 (1998); *Commonwealth v. Glacken, supra* at 168-169. Here, it is undisputed that the appropriate standard of review is whether the error created a substantial risk of a miscarriage of justice. Therefore, we consider the strength of the Commonwealth's case to determine whether the outcome "of the trial might have been different had the error not been made." *Commonwealth v. Azar*, 435 Mass. 675, 687 (2002), quoting *Commonwealth v. LeFave*, 430 Mass. 169, 174 (1999). We ask whether there was error; whether the defendant was prejudiced thereby; whether, in the context of the entire trial, it is reasonable to conclude that the error materially affected the verdict; and whether counsel's failure to object or raise a claim of error was a reasonable tactical decision. *Commonwealth v. Randolph*, 438 Mass. 290, 297-298 (2002), and cased cited. An affirmative answer to all these questions is necessary for relief to be granted. *Id.* at 298.

The defendant urges us to conclude that the erroneous instruction created a substantial risk of a miscarriage of justice because he was prejudiced and the jury's verdict was affected. His claims are based on his contention that the three requirements for self-defense constitute a "step by step" analytical framework that guides the jury's consideration of the evidence. He argues that the incomplete self-defense instruction resulted in the jury's making findings in an analytical void, because they had no clear standard for assessing whether the defendant used more force than necessary. He also claims that the instruction given here failed to "require[]" the jury to focus on an examination of exculpatory evidence, and that a single punch in response to a

District Court (2009) (Self-Defense Using Nondeadly Force) sets forth the other two factors that would satisfy the Commonwealth's burden of proving, beyond a reasonable doubt, that the defendant did not act in self-defense as follows:

"[T]hat the defendant did not reasonably believe that he was being attacked or immediately about to be attacked, and that his safety was in immediate danger; or . . . that the defendant did not do everything reasonable in the circumstances to avoid physical combat before resorting to force."

single punch was not a disproportionate response to the danger the defendant was in.

We are not persuaded. The defendant cites no authority for the specific propositions that the instruction on self-defense is a step-by-step analytical framework or that the self-defense instruction requires the jury to focus on exculpatory evidence. In fact, these assertions pertain more to the determination whether a self-defense instruction is warranted. See, e.g., *Commonwealth* v. *Williams*, 53 Mass. App. Ct. 719, 721-722 (2002) (defendant not entitled to self-defense instruction). Moreover, the argument that it is a step-by-step analysis makes no logical sense, given that the Commonwealth may prove that the defendant did not act in self-defense by proving, beyond a reasonable doubt, that only one of the requirements did not exist. *Commonwealth* v. *Glacken*, *supra* at 167.

We agree with the Appeals Court that the defendant was not prejudiced by the incomplete instruction. *Commonwealth* v. *King*, 77 Mass. App. Ct. 194, 200 (2010). The instruction necessarily presumed that the Commonwealth failed to prove that the defendant did not reasonably believe he was under attack, that he feared for his safety, and that he had a reasonable means of escape. As the Appeals Court stated, this omission "actually made the Commonwealth's burden of proof more difficult. If the Commonwealth had not proved beyond a reasonable doubt that the defendant used unreasonable force in the circumstances, the jury's only option would have been to acquit the defendant."[4] *Id.*

The cases the defendant discusses also do not assist him

---

[4] We also agree with the Appeals Court that it would have been reasonable for the jury to conclude that the defendant did not try to remove himself from the situation. *Commonwealth* v. *King*, 77 Mass. App. Ct. 194, 201 (2010). The only person blocking the defendant from exiting the lounge after he was punched was Sean Griffin, who could have moved out of the way. The defendant's argument that using this means of escape would have risked injury to Griffin, himself, or others is speculative, especially because Griffin's testimony was that the defendant entered the lounge through one of the two swinging doors and Griffin did not know whether the second door was locked.

We note that the jury also could have concluded that the defendant was only blocked in because he was waiting for the victim. The defendant's evidence was that the victim saw the defendant and took the time to turn around and put his glass down on a table before approaching the defendant. Craig Hart, another of the defendant's coworkers, testified that the table was no more than five feet away from the door. The jury could have concluded

because they do not concern the circumstances at issue here. Three are irrelevant because they concern whether a defendant was entitled to a self-defense instruction. See *Commonwealth* v. *Williams, supra* at 721-722; *Commonwealth* v. *Alebord,* 49 Mass. App. Ct. 915 (2000); *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 748, 750 (1980). Two cases concern circumstances where there was prejudicial error because the instruction shifted the burden to the defendant to prove he acted in self-defense. See *Commonwealth* v. *Mejia,* 407 Mass. 493, 494-497 (1990) (manslaughter); *Commonwealth* v. *Harrington,* 379 Mass. 446, 453-455 (1980) (murder). In one case, the judge completely omitted a proper self-defense instruction and never told the jury that, if the Commonwealth failed to prove that the defendant acted in self-defense, they must acquit. *Commonwealth* v. *Franchino,* 61 Mass. App. Ct. 367, 372-373 (2004).

Here, however, the defendant does not argue, nor could he, that the instructions shifted the burden of proof. The judge instructed, four times, that it was the Commonwealth's burden to prove that the defendant did not act in self-defense or employed unreasonable force, and stated that the defendant had no obligation to prove anything. See *Commonwealth* v. *Williams,* 450 Mass. 879, 883-884 (2008) (no burden shifting where judge repeatedly instructed jury of Commonwealth's burden to disprove self-defense). The defendant also does not argue that the instruction that was given was unclear as far as it went; indeed, it followed the model instructions.

Moreover, the judge's instruction did provide the jury with the context and analytical framework to assess the proportionality of the punch the defendant gave the victim. He stated that "a person may lawfully use reasonable force to defend himself from physical attack" and set forth the factors the jury needed to consider the reasonableness of the force used (i.e., the "infirmity of human impulses and passions," the relative physical capabilities and number of the individuals involved, and "the availability of room to maneuver or the means of escape

---

that because of the distance between the table and the doorway, there was plenty of time for the defendant to continue into the lounge itself, away from the doorway, and that the defendant instead chose to stay where he was to confront the victim.

from the area"). See *Commonwealth* v. *Shaffer*, 367 Mass. 508, 512-513 (1975) (instruction that defendant had right to be in her home when she shot victim not misleading because made clear that location of assault was factor for jury to consider).

We also disagree with the defendant that the jury did not hear his version of events. They heard the defendant's case as set forth above. The defendant also testified that, when the victim started toward him, he knew the victim was going to punch him in the face, and stated, "There was no way around it at that point." See *Commonwealth* v. *Glacken*, 451 Mass. 163, 168 (2008) (no error where jury were not instructed to ignore defendant's evidence or theories). Given that the jury heard all the evidence, coupled with the judge's instruction, however incomplete, we do not agree with the defendant that the jury were forced to focus solely on the defendant's disproportionate injury because they had no context in which to consider the incident. There was no prejudice.[5]

In addition, the strength of the Commonwealth's case was based on the credibility of the victim, the hostess, and police

---

[5]The defendant argues that the prosecutor's references in closing argument to how severely the victim was injured also contributed to juror confusion because they were led to conflate disproportionate injury with disproportionate force.

After asking whether the jury believed that the defendant did everything he could to walk away, the prosecutor stated:

"[J]ust because the victim allegedly punched the defendant . . . [h]e doesn't have the right to punch back, and he certainly does not have the right to use excessive force, force beyond what was used against him. . . . Now, we heard the defendant take the stand. He didn't suffer any injuries that we heard of. There was no testimony about any injuries, but we do know about the victim's injuries in this case. So, we know that if the victim did indeed punch first, the defendant punched back with force, excessive, beyond what was used against him, to the point where the victim suffered lacerations to the forehead, fractured eye socket, . . . facial fractures . . . substantial injuries, where . . . the defendant says, 'I was just punched in the face.' "

The defendant does not argue that the prosecutor's argument was improper. We assume the jury followed the judge's instruction in his initial charge to the jury that the argument is not evidence, and his instruction at the close of trial that they alone determined what constituted reasonable force in these circumstances. See generally *Commonwealth* v. *LeBlanc*, 456 Mass. 135, 141 (2010).

sergeant. The jury could have believed these witnesses and found that the victim did not strike the defendant, and that the defendant not only struck the victim but also used a glass in his fist as a weapon. They also could have found that the defendant lied to police when he stated that he was attacked by the victim and several of his friends. See *Commonwealth* v. *Gomez*, 450 Mass. 704, 711 (2008) (credibility determination is province of jury).

Even considering the evidence presented only in the defendant's case, there was sufficient evidence for the jury to conclude that the defendant used unreasonable force in the circumstances. Despite being punched by the victim, the defendant had no mark on his face, remained upright,[6] and was unimpaired enough to punch back immediately. However, the force the defendant employed was strong enough to cause the victim to fall onto a table before hitting his head "hard" on the floor and break a glass he was holding. Although the defendant testified that the victim "*stumbled* on" and fell "*off*" a table and "fell on his head pretty hard" (emphasis added), his coworkers testified that the victim fell back onto the table, which, according to Craig Hart, was some distance away from the doorway.[7] As the Appeals Court pointed out, the defense did not argue that the victim's injuries were caused by his accidentally falling over the table and onto the ground. *Commonwealth* v. *King*, 77 Mass. App. Ct. 194, 201 (2010). Instead, the defense was that the victim's version of events was not credible, including his testimony regarding the extent of his injuries, and that the Commonwealth had to prove that the defendant did not reasonably use self-defense in the face of imminent danger of a physical threat. The jury reasonably could have believed that, as a result of the blow from the defendant, the victim suffered fractures severe enough to require surgery, and concluded that such force was unreasonable in the circumstances.

Moreover, the jury reasonably could have disbelieved the

---

[6]Sean Griffin, whose presence resulted in the defendant's being "blocked in," not only did not testify that the victim actually hit the defendant but also he did not state that the defendant was pushed backward toward him, as one might expect if the victim had punched the defendant with some force.

[7]He testified that the table was "not even five feet" away from the doorway.

coworkers' testimony supporting the defendant's claim that the victim was the first aggressor. On cross-examination, they testified that they did not speak to police to inform them that the victim was the first aggressor or to identify themselves as witnesses, even though there was sufficient evidence to support the inference that both men saw that the police had handcuffed the defendant while he was being questioned. See note 1, *supra.*

*Judgment affirmed.*