NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-617

COMMONWEALTH

vs.

DIANE E. GILLIGAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of vandalism of property. Before us is the defendant's consolidated appeal from her conviction and from the denial of her motion for a new trial. She argues that the evidence was insufficient to support her conviction, that an erroneous jury instruction created a substantial risk of a miscarriage of justice, and that she is entitled to a new trial because the judge admitted testimony about video recordings that were never produced to the defense. We affirm.

Background. On March 7, 2018, the defendant's upstairs neighbor, Lindsay Bennett-O'Brien (O'Brien), left her apartment in South Boston for a trip out of state. She returned late at

night on March 11, 2018.  The next morning she noticed that the front passenger window of her car, which had been intact before she left, was broken.  O'Brien had two cameras set up around the building, directed toward the back parking lot.  O'Brien reviewed the footage from when she had been away and was able to identify the defendant on the recordings "knocking out [her] window."

Video footage entered into evidence from the night of March 8, 2018,[1] showed the following.  At some point that evening, the defendant left her apartment and walked through the back parking lot and then down the driveway briefly, before returning to the parking lot.  The defendant then went straight to O'Brien's car, immediately hit the front passenger window twice until it shattered, and returned to her apartment.  The video footage captured the sound of the defendant's hitting the window twice and the sound of it shattering, and footage from the roof appeared to show the window intact prior to the incident.  After a few minutes, the defendant went back outside and drove away in her car.  Upon returning about thirty minutes later, the defendant reapproached O'Brien's car, pushed on the glass at least once, and covered the window with a trash bag.

---

[1] Three brief video recordings of the incident were admitted at trial over the defendant's objection.  One recording was taken from a rooftop camera, and the other two came from a shed camera.

2

The defendant, testifying on her own behalf, did not dispute that she broke O'Brien's car window but claimed that she did so because she saw a "softball size" bowing on the window. According to the defendant, she "just tapped [the window] twice" with a wooden spoon to force the bowing inward and prevent the window from shattering in the parking lot. She then drove to the police station to report the damage. After returning, the defendant pushed the glass inward before placing a bag over the window to protect the car. At this point she went upstairs to notify O'Brien about the damage, but O'Brien was not home.

Discussion. 1. Sufficiency of the evidence. In reviewing the denial of a motion for a required finding of not guilty, we evaluate the evidence in the light most favorable to the Commonwealth to determine "whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation omitted). Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019). Inferences supporting a conviction "need only be reasonable and possible; [they] need not be necessary or inescapable" (quotation omitted). Id.

The crime of vandalism of property requires proof that the defendant "intentionally, willfully and maliciously or wantonly" damaged the property of another. G. L. c. 266, § 126A. The statute "contains two disjunctive elements: [willful] and

3

malicious conduct, or, wanton conduct." Commonwealth v. McDowell, 62 Mass. App. Ct. 15, 22 (2004). In this case the Commonwealth proceeded under a theory of willful and malicious conduct. The defendant challenges only the malice element, arguing that the Commonwealth failed to prove that she acted with malice in breaking the car window. We disagree.

To satisfy the malice element, the Commonwealth must prove that the defendant's conduct was "motivated by cruelty, hostility or revenge" (quotation omitted). McDowell, 62 Mass. App. Ct. at 22. Here, the undisputed video evidence showed the defendant walking up to the front passenger window of O'Brien's car and, without hesitation, hitting it twice, causing it to shatter. From the seemingly inexplicable nature of these actions, the jury could infer that the defendant acted maliciously. See Commonwealth v. Rumkin, 55 Mass. App. Ct. 635, 640-641 (2002) (jury could infer malice from defendant's kicking of car mirror).

The Commonwealth's "position as to proof [did not] deteriorate between the time the Commonwealth rested and the close of all the evidence" (quotation omitted). Commonwealth v. Doucette, 408 Mass. 454, 462 (1990). The defendant admitted in her testimony to breaking the window, albeit for different reasons than those alleged by the Commonwealth. It was for the jury to determine the credibility of the defense witnesses, and

4

the jury were free to disbelieve their testimony.  See Commonwealth v. Berry, 68 Mass. App. Ct. 78, 81 (2007).

2.  Erroneous jury instruction.  In his final charge, the judge correctly instructed the jury that the Commonwealth had the burden of proving that the defendant acted "willfully with malice."  But in defining the element a few moments later, the judge stated that the Commonwealth must prove that the defendant "acted willfully or maliciously."  The Commonwealth concedes that this latter instruction was incorrect because it could allow the jury to convict the defendant without a finding of malice.

Because the defendant did not object to the instruction at trial, the error is only reversible if it created a substantial risk of a miscarriage of justice.  See Commonwealth v. King, 460 Mass. 80, 85 (2011).  Our inquiry "turns on whether a reasonable juror could have used the instruction incorrectly." Commonwealth v. Sunahara, 455 Mass. 832, 836 (2010).  In making this assessment, "we review the entire charge to the jury to determine the interpretation a reasonable jury would place on the judge's words."  King, supra.  We also consider the strength of the Commonwealth's case, the nature and significance of the error, and the possibility that the lack of objection was a reasonable tactical decision.  See id.

5

We are satisfied in this case that the erroneous instruction did not create a substantial risk of a miscarriage of justice. The judge's first, correct instruction that the defendant must have acted "willfully with malice" left little room for doubt that a showing of malice was required. See Commonwealth v. Koonce, 418 Mass. 367, 370 (1994) (new trial not warranted based on judge's "single slip of the tongue" that was "isolated and discrete"). The misstatement only came after the correct instruction focused the jury on the necessity of finding malice, and it went unnoticed by both of the attorneys and the judge. This suggests that the error was unlikely to have misled the jury in any significant way. See Commonwealth v. Oliveira, 445 Mass. 837, 844-845 (2006) (no substantial likelihood of miscarriage of justice from misstatement that was made between two correct instructions and went unnoticed by experienced defense counsel).

The error was further mitigated by the jury's repeated exposure to the malice requirement throughout trial and the strength of the evidence presented on the issue. The defendant previewed the malice requirement on multiple occasions. She pointed to it in both her opening statement and closing argument and affirmed in her testimony that she did not break the window with malice, ill will, or hostility. Also, after the jury were sworn, the clerk informed them that the defendant was charged

with vandalizing O'Brien's property "intentionally, willfully, and maliciously, or wantonly."  Moreover, the record as a whole, particularly the video recordings, presented strong evidence that allowed the jury to conclude that the defendant acted maliciously by breaking the window.  See Commonwealth v. Solomonsen, 50 Mass. App. Ct. 122, 125 (2000) (no danger that incorrect instruction misled jury given strength of evidence).  When viewed in the context of the entire charge and the evidence presented, the erroneous instruction did not present a substantial risk of a miscarriage of justice.  See Oliveira, 445 Mass. at 844-845.

In her new trial motion, the defendant raised a claim of ineffective assistance of counsel based on counsel's failure to object to the erroneous instruction.  Where a "claim of ineffectiveness is predicated, as it is here, on counsel's failure to object to something that occurred at trial, the standard for evaluating the ineffectiveness claim is not significantly different from the substantial risk standard that is applicable to our review of the underlying, unpreserved error."  Commonwealth v. Azar, 435 Mass. 675, 686 (2002).  For the reasons already stated, the defendant has failed to demonstrate a substantial risk of a miscarriage of justice.

3.  Testimony on unproduced video recordings.  Prior to trial the defendant filed a motion in limine to prevent the

7

admission of any video recordings.  The defendant asserted that admitting a "partial clip" would be unfairly prejudicial because only the full recordings from March 6, 2018, through March 8, 2018, which were never produced, could fairly represent how the window was damaged.[2]  In ruling on the motion, the judge limited the evidence "to the actions of the 8th of March," thereby excluding any testimony about what was on the video footage prior to that date.

In her new trial motion, the defendant argued that the Commonwealth ran afoul of the judge's ruling when, on redirect examination of O'Brien, it elicited testimony that she "watched every minute of [footage from] the entire time period" she was away and that "[t]here was nothing else that showed anything that could have caused the window to break."  The defendant claimed that this violated her rights under the Sixth and Fourteenth Amendments to the United States Constitution because defense counsel had not seen the other video footage and was thus unable to conduct a meaningful cross-examination.  The motion judge, who was also the trial judge, disagreed, finding that defense counsel opened the door to the testimony.

---

[2] O'Brien produced video clips from March 6, 2018, and March 8, 2018.  When the defendant requested more footage, the Commonwealth responded that O'Brien did not have any more footage because no recordings could be retrieved from the security company after ten days.

8

We review the denial of a new trial motion only for abuse of discretion, affording "special deference" to the motion judge's rulings where he was also the trial judge. Commonwealth v. Hung Tan Vo, 427 Mass. 464, 467 (1998). We discern no abuse of discretion in the judge's ruling here that defense counsel opened the door to the challenged testimony. During his cross-examination of O'Brien, defense counsel repeatedly asked questions that implied that O'Brien had no knowledge of what happened to her car window apart from what she saw on the video clips produced from March 8, 2018. For instance, counsel asked, "But in terms of the video, there's nothing showing what happened between when you went away and when this incident occurred, correct?" When O'Brien asked him to repeat the question, counsel asked, "I'm saying . . . that you went away on the 7th . . . and the video here only shows one portion of the time, which would be the nighttime of March 8th. It doesn't save anything else?" O'Brien confirmed that that was correct. Counsel then had O'Brien confirm that she was not "at [her] house" and so was not "personally able to observe anything during that time." Toward the end of cross-examination, counsel followed up by asking O'Brien, "[Y]ou have no idea what may or may not have happened to that window prior to you seeing the video and coming home, correct?" O'Brien replied, "No."

9

The judge properly concluded that these questions opened the door to testimony on redirect about O'Brien's review of other video footage from the time period at issue.  The plain import of the defendant's cross-examination was that O'Brien had no knowledge whether her car window might have already been damaged sometime between when she left for her trip and when the defendant was seen on the video clips from March 8, 2018.  Consequently, eliciting testimony about O'Brien's review of the other recordings was a "fair response to the defendant's cross-examination" and the "over-all defense strategy."  Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 509 (2009).  The judge thus did not abuse his discretion in denying the defendant's motion for a new trial on this basis.  See Commonwealth v. McCowen, 458 Mass. 461, 479 (2010); Saunders, supra at 510.

> Judgment affirmed.
>
> Order denying motion for new
>    trial affirmed.
>
> By the Court (Vuono, Shin &
>    Toone, JJ.[3]),
>
> Assistant Clerk

Entered: May 28, 2024.

---

[3] The panelists are listed in order of seniority.