SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. FAYAD F., a juvenile

 
 Docket:
 SJC-13625
 
 
 Dates:
 November 6, 2024 – January 27, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Delinquent Child. Practice, Criminal, Juvenile delinquency proceeding, Continuance without a finding, Admission to sufficient facts to warrant finding. Juvenile Court, Delinquent child, Jurisdiction. Jurisdiction, Delinquent child, Juvenile Court, Juvenile delinquency proceeding. Self-Defense. Evidence, Self-defense. Statute, Construction. Idle and Disorderly Person. Assault and Battery
 
 

             Complaint received and sworn to in the Barnstable County/Town of Plymouth Division of the Juvenile Court Department on June 8, 2023.
            The case was heard by Sylvia Gomes, J.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            Lauren Russell for the juvenile.
            Eileen Connors Moriarty, Assistant District Attorney (Elizabeth A. Sweeney, Assistant District Attorney, also present) for the Commonwealth.
            Caroline Alpert, for youth advocacy division of the Committee for Public Counsel Services & another, amici curiae, submitted a brief.
            KAFKER, J.  The primary issue presented in this case is whether a continuance without a finding (CWOF) entered after an admission to sufficient facts is sufficient to establish a "first offense" within the meaning of G. L. c. 119, § 52 (§ 52).  The juvenile in the instant case had been granted such a CWOF prior to being charged with disorderly conduct, a minor misdemeanor,[1] as well as assault and battery.  On appeal, the juvenile contends that the Juvenile Court lacked jurisdiction over the minor misdemeanor charge of disorderly conduct because a CWOF entered after an admission to sufficient facts was inadequate to prove he had committed a prior offense.  For the reasons set forth infra, we hold that a CWOF entered after an admission to sufficient facts is sufficient to prove that a first offense has occurred under § 52.  Consequently, the Juvenile Court properly exercised jurisdiction over the subsequent disorderly conduct offense.  This is consistent with the guidance provided by the Juvenile Court Rules for First Offense Determinations and Hearings Held Pursuant to Commonwealth v. Wallace W., 482 Mass. 789 (2019)[2] (Juvenile Court rules or rules for first offense determinations and hearings), which the juvenile also challenges on appeal.  We further hold that the Juvenile Court rule at issue was properly promulgated.  Finally, we conclude that the evidence presented was sufficient to support the juvenile being adjudicated delinquent of disorderly conduct and assault and battery.[3]
            1.  Background.  a.  Prior charges and facts in the instant case.  Prior to the incident at issue, which occurred on June 8, 2023, the juvenile had three entries in his court activity record information (CARI):  one case had been dismissed after a period of pretrial probation, one case had been dismissed after a CWOF, and one case was open.  A review of the transcript of the colloquy between the juvenile and the Juvenile Court judge revealed that the juvenile was granted the CWOF after admitting to sufficient facts to prove an assault and battery.[4]
            On June 8, 2023, the juvenile was involved in an altercation with a man in the lobby of the Barnstable District and Juvenile Court.  While walking up a set of stairs that led to the lobby level of the court house from a lower level, the victim leaned over the railing to look down the stairs, presumably at the juvenile.  The victim continued up the stairs and paused at the top of the landing, rolling up his sleeves in what appeared to be a fighting stance.[5]  The juvenile walked up the stairs quickly, seconds after the victim, with both of his hands on the stair banisters.  Once the juvenile reached the top of the stairs, the victim swung his fist at the juvenile, who ducked to avoid the punch.  The juvenile then punched the victim.  The pair continued to fight until nearby court officers successfully separated and restrained them, approximately twenty seconds after the fight began.  Several onlookers in the court house either intervened in the altercation or approached the scene.  The altercation was captured on video.
            b.  Procedural history.  That same day, the juvenile was charged with assault and battery in violation of G. L. c. 265, § 13A (a), and disorderly conduct in violation of G. L. c. 272, § 53, and was arraigned on both charges.[6]  Whether the disorderly conduct charge was the juvenile's first offense of a minor misdemeanor was never raised before the Juvenile Court.  The issue was first raised on appeal.[7]
            In the jury-waived trial, the Commonwealth relied primarily on the video recording of the incident to prove disorderly conduct and assault and battery.  At the conclusion of the Commonwealth's case, the juvenile moved for a required finding of not delinquent on the disorderly conduct charge on the ground that there was "no evidence that the general public was disrupted."  The juvenile did not move for a required finding on the assault and battery charge.  The Juvenile Court judge denied the juvenile's motion after viewing the video recording of the altercation again.  In his closing argument, the juvenile argued that he acted in self-defense, which the judge rejected.  The judge adjudicated the juvenile delinquent as to both charges and sentenced him to one year of probation with a no-contact order on the assault and battery charge and one year of probation on the disorderly conduct charge.
            The juvenile timely filed a notice of appeal.  In his brief on appeal, the juvenile argues that the Juvenile Court judge should not have exercised jurisdiction over the disorderly conduct charge without first requiring the Commonwealth to prove in a prearraignment Wallace W. hearing that a first offense had occurred, because a CWOF entered after an admission to sufficient facts is inadequate to establish a first offense.  See Wallace W. v. Commonwealth, 482 Mass. 789, 800-801 (2019).[8]  We transferred the case sua sponte from the Appeals Court to address whether a CWOF after an admission to sufficient facts is sufficient to establish that a prior offense occurred for the purposes of § 52.
            2.  Discussion.  We conclude that a CWOF entered after an admission to sufficient facts establishes that a first offense occurred for the purposes of § 52.  Accordingly, the disorderly conduct charge at issue in the instant appeal is not the juvenile's "first offense" and the Juvenile Court had jurisdiction to proceed on that charge.[9]
            a.  Jurisdiction over the disorderly conduct charge.  i.  Statutory text and purpose.  The Juvenile Court "is a court of limited jurisdiction, which 'has no . . . authority in the absence of a specific statutory authorization.'"  Commonwealth v. Mogelinski, 473 Mass. 164, 167 (2015), quoting Commonwealth v. A Juvenile, 406 Mass. 31, 34 (1989).  The Legislature, accordingly, granted the Juvenile Court jurisdiction over "delinquent children" as defined by § 52.  See G. L. c. 218, § 60 ("the juvenile court department shall have and exercise jurisdiction . . . over cases of . . . delinquent children").  In 2018, the Legislature amended § 52 to exclude children between the ages of twelve and eighteen who commit a "first offense of a misdemeanor for which the punishment is a fine, imprisonment in a jail or house of correction for not more than 6 months or both such fine and imprisonment" from the definition of "[d]elinquent child."  St. 2018, c. 69, § 72 (effective July 12, 2018).
            In creating this statutory carveout, the Legislature intended to provide juveniles who engage in a first instance of a minor misdemeanor a second chance to avoid the lasting consequences of involvement in the juvenile justice system.  See Commonwealth v. Manolo M., 486 Mass. 678, 685-687 (2021); Wallace W., 482 Mass. at 795; Lazlo L. v. Commonwealth, 482 Mass. 325, 333-334 (2019).  The Legislature did not, however, intend to exempt repeat juvenile offenders from involvement with the juvenile justice system, which aims to correct their delinquent behavior and rehabilitate them.  Wallace W., supra at 795-796.  If a juvenile has committed a first offense of a major misdemeanor, a felony, or another minor misdemeanor, the Juvenile Court may exercise jurisdiction over the subsequent minor misdemeanor.
            In carving out a first offense of a minor misdemeanor from the Juvenile Court's jurisdiction, while also requiring that a first offense be proven in order to subject subsequent minor misdemeanor offenses to the Juvenile Court's jurisdiction, the Legislature left the courts to resolve the "difficult question" of "what burden of proof or type of procedure is necessary to establish a 'first offense' under § 52," particularly when the first offense was a minor misdemeanor.  Wallace W., 482 Mass. at 796.  In a series of cases decided after the statutory amendment, this court has set out the requirements of this sui generis process.  See Commonwealth v. Nick N., 486 Mass. 696, 704 (2021) (describing process as "unique").  In Wallace W., supra at 798, 800 & n.4, we held that proof beyond a reasonable doubt was required, and that probable cause alone was not sufficient.  In Wallace W. and Nick N., we also, however, recognized the "logistical and other difficulties . . . in proving first offenses, including tracking down and securing the cooperation of witnesses months or years later for proceedings that would not directly affect them."  Nick N., supra.  We also explained that, given these difficulties and the lesser stakes involved, exceptions to the rules of evidence would be allowed in Wallace W. hearings to prove first offenses of minor misdemeanors, including the admission of reliable hearsay.  Id. at 706-707.[10]
            In applying this guidance, we have concluded that adjudications of delinquency after trials or pleas are therefore clearly sufficient to prove a first offense.  See Wallace W., 482 Mass. at 799-800.  We have further held that "[a] continuance without a finding entered after a jury or bench trial, or after a plea of delinquency, is also sufficient to establish a first offense under § 52."  Id. at 800 n.4.  However, in Wallace W., we "decline[d] to consider the status of continuances without a finding that are entered in other circumstances," as we did not need to address that issue in order to resolve the case then before us.  Id.  Here we consider CWOFs entered after admissions to sufficient facts, and conclude that, like CWOFs entered after a trial or plea, they are sufficient to prove a first offense under § 52.
            A Juvenile Court judge may order a CWOF after a trial verdict of delinquency, a plea of delinquency, or an admission to sufficient facts.  See G. L. c. 119, § 55B; G. L. c. 278, § 18; Wallace W. 482 Mass. at 800 n.4; Commonwealth v. Magnus M., 461 Mass. 459, 465 (2012).  Although not technically pleas, admissions to sufficient facts are, in many respects, "the functional equivalent of a guilty plea."  Commonwealth v. Villalobos, 437 Mass. 797, 800-801 (2002), quoting Commonwealth v. Mahadeo, 397 Mass. 314, 316 (1986).  See Commonwealth v. Duquette, 386 Mass. 834, 844-846 (1982).  In fact, "[o]nce such a plea or admission is accepted, guilt has been established."  Commonwealth v. Sebastian S., 444 Mass. 306, 313 (2005).  Indeed, it is for these very reasons that a CWOF following an admission to sufficient facts may ripen into an adjudication and sentencing with no further proof required on the underlying offense.  See Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 235 n.6 (2012) ("We provide the same procedural protections to defendants who admit to sufficient facts and those who plead guilty because if a defendant who admitted to sufficient facts were to violate his or her probation and have it revoked, a conviction would enter without a new plea hearing"); Villalobos, supra at 801 ("in the event of a violation of those conditions, the 'admission' remains and may ripen into an adjudication of guilt and imposition of sentence").
            As with all tenders of plea, the judge may accept an admission to sufficient facts "only after first determining that it is made voluntarily with an understanding of the nature of the charge and the consequences of the . . . admission."  Mass. R. Crim. P. 12 (a) (3), as amended, 482 Mass. 1501 (2019).  Specifically, the judge must engage in a colloquy in which the judge informs the juvenile of the consequences of the plea or admission and the prosecutor presents the factual basis of the charge.  Mass. R. Crim. P. 12 (c) (3), as amended, 489 Mass. 1501 (2022).  The juvenile must then admit to such facts.  Importantly, for the purposes of this appeal, the judge informs the juvenile that he or she is waiving numerous rights, including "the right to be presumed innocent until proved guilty beyond a reasonable doubt."  Mass. R. Crim. P. 12 (c) (3) (A) (i).
            The standard Juvenile Court tender of plea or admission form, likewise, contains a notice of rights section, which includes the right to be presumed innocent until proven delinquent beyond a reasonable doubt.  See Juvenile Court Department, Tender of Plea or Admission & Waiver of Rights, JV-005 (rev. Nov. 9, 2020).  The Juvenile Court judge also certifies, on that same standard form, both that the juvenile "knowingly, intelligently and voluntarily" waived his or her rights and that the judge "found a factual basis for the charge(s) . . . and . . . that the facts as related by the prosecution and admitted by the [juvenile] would support an adjudication/a conviction."  Id.
            The colloquy preceding the CWOF at issue carefully followed these requirements.  In the course of the colloquy, the Juvenile Court judge asked the juvenile whether he had discussed his decision to admit to sufficient facts with his mother, whether the juvenile was under the influence of any drugs or alcohol or had ever been treated for any mental illness or condition, and whether the juvenile had any difficulty reading or understanding English.  The judge ensured that the juvenile understood the charge against him and the sentencing consequences of an admission.  The judge further explained that any sentence that the law permits could be imposed.  The judge enumerated the rights the juvenile was waiving in admitting to sufficient facts:  the right to a fair and impartial trial, the right to confront his accusers and witnesses, the right to present evidence on his own behalf, the right against self-incrimination, the right to file motions to suppress evidence (or appeal from denials thereof), the right to present his own case, and the right to have the charge proved beyond a reasonable doubt.  The judge then asked counsel for the juvenile whether she had reviewed the elements of the charge with the juvenile and his mother and had advised them of the maximum penalty.  Next, the Commonwealth recited the facts -- namely, that the juvenile, with his open hand, intentionally struck another individual in the head.  The juvenile responded, "Yes," when asked by the judge, "[I]s that essentially what happened?"  The judge then asked the juvenile whether the admission was made "willingly, freely, and voluntarily," whether the juvenile had been induced to make the admission through threats or promises, and whether he admitted to the facts of his own free will.  The judge then asked counsel for the juvenile whether she had any further questions and whether she was satisfied that the juvenile understood the admission.  Lastly, the judge informed the juvenile of the possible immigration consequences of such an admission.  Finally, after the colloquy, the judge found that there was "a factual basis for [the juvenile's] admission . . . [and] that [the juvenile] underst[ood] the nature of the offense and the consequence of his admission."  The judge then accepted the juvenile's admission.
            In sum, after a full colloquy, the juvenile has admitted to facts sufficient to find him delinquent beyond a reasonable doubt.  This admission is the functional equivalent of a guilty plea.  CWOFs in this context are not materially different from those that we have already concluded satisfy the requirements of § 52.  See Wallace W., 482 Mass. at 800 n.4.  We therefore conclude that a CWOF entered after an admission to sufficient facts is sufficient to establish that an offense has occurred for the purposes of determining whether a subsequent offense is a "first offense" within the meaning of § 52.  This is the same conclusion reached by the Juvenile Court Department when it developed its rules for first offense determinations and hearings.
            ii.  Promulgation of rule 3.C.1.  The juvenile argues that the promulgation of Rule 3.C.1 of the Juvenile Court Rules for First Offense Determinations and Hearings Held Pursuant to Commonwealth v. Wallace W., 482 Mass. 789 (2019) (rule 3.C.1) was unlawful because it "exceed[ed] the bounds" of the Juvenile Court's authority, Commonwealth v. Clerk of the Boston Div. of the Juvenile Court Dep't, 432 Mass. 693, 702 (2000), and "trump[ed] a specific statutory right," Charbonneau v. Presiding Justice of the Holyoke Div. of the Dist. Court Dep't, 473 Mass. 515, 523 (2016).  We disagree.  Such rulemaking is specifically authorized by statute, and the Juvenile Court rules' guidance on CWOFs entered after admissions to sufficient facts is, as explained in this decision, consistent with the statutory requirements of § 52 and our case law interpreting this provision.
            The statutory authority for the Juvenile Court to make such rules is provided in G. L. c. 218, § 60.  Section 60 authorizes the Chief Justice of the Juvenile Court to "provide procedural forms and make general rules and issue standing orders in reference to practice and procedure for the conducting of business in the juvenile court department, subject to the approval of the supreme judicial court."  G. L. c. 218, § 60.  In the instant case, the Chief Justice of the Juvenile Court submitted the rules at issue to this court on June 22, 2022, which we approved and promulgated on July 13, 2022.  The rules became effective on October 1, 2022.  Those rules, in accordance with specific statutory authorization, addressed a complex set of Juvenile Court practice issues raised by § 52 and our decision in Wallace W.  Indeed, in Nick N., 486 Mass. at 711, we declared that "the Juvenile Court Department should use its authority[, pursuant to G. L. c. 218, § 60,] to promulgate more specific notice and discovery rules consistent with this opinion."  Although we identified at least two specific questions related to Wallace W. proceedings that we concluded required additional Juvenile Court practice guidance, we did not thereby preclude the Juvenile Court Department from providing additional guidance in this difficult area of law.  See Nick N., supra.
            The additional guidance that the Juvenile Court did in fact provide in rule 3.C.1 was neither inconsistent with, nor in contravention of, existing law.  Contrast Charbonneau, 473 Mass. at 523 (striking down District Court standing order insofar as it limited defendant's right to tender "defendant-capped" plea on day of trial because court rules may not "trump a specific statutory right"); Commonwealth v. McCulloch, 450 Mass. 483, 489 n.8 (2008) (noting that District Court standards practice manual "not intended to create a new form of criminal disposition . . . beyond the boundaries of existing rules and statues").  Rule 3.C.1 explains that when a juvenile has had a previous charge continued without a finding after an admission to sufficient facts, the Commonwealth need not prove the prior offense in a Wallace W. hearing.[11]  As we have explained in this opinion, such an interpretation accords with our reasoning in Wallace W. and its progeny.
            Finally, as a point of clarification, we do caution that the Juvenile Court rules do not provide for CWOFs for first offenses of minor misdemeanors, which are to be dismissed outright pursuant to § 52 and not continued without a finding, because the Juvenile Court has no jurisdiction over such first offenses.  See Commonwealth v. Vince V., 495 Mass. 96, 99-100 (2024).  The only exception would be for first offenses of minor misdemeanors continued without a finding prior to the 2018 amendment of § 52 that excluded such offenses from the jurisdiction of the Juvenile Court.  See St. 2018, c. 69, § 72 (effective July 12, 2018).  Here, the CWOF that was entered after the juvenile admitted to sufficient facts was, however, for assault and battery, which is not a minor misdemeanor.  It was therefore appropriate to continue that case without a finding and to rely on such a CWOF to establish a first offense pursuant to § 52.
            b.  Sufficiency of the evidence.  We next turn to the juvenile's claim that the evidence was insufficient to allow the Juvenile Court judge to find beyond a reasonable doubt that the juvenile did not act in self-defense.  The juvenile claims that because he acted in self-defense, he could not be found delinquent on either charge.  "In reviewing claims of insufficient evidence, we assess the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt."  Commonwealth v. Robinson, 493 Mass. 303, 307 (2024), citing Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  We conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the judge's finding that the juvenile did not act in self-defense.
            i.  Self-defense.  The burden is on the Commonwealth to prove beyond a reasonable doubt that the juvenile did not act in self-defense.  See Commonwealth v. Williams, 450 Mass. 879, 882 (2008).  To satisfy this burden, the Commonwealth must establish beyond a reasonable doubt that at least one of the following factors did not exist:  "(1) the [juvenile] had reasonable concern for his personal safety; (2) he used all reasonable means to avoid physical combat; and (3) 'the degree of force used was reasonable in the circumstances'" (citation omitted).  Commonwealth v. King, 460 Mass. 80, 83 (2011).
            The Commonwealth argues that the video recording presented at trial demonstrated that the juvenile did not avail himself of an opportunity to retreat.  Viewing the evidence in the light most favorable to the Commonwealth, we agree.  As the Juvenile Court judge found: 
"[T]he Commonwealth did prove the second prong that the defendant . . . did not do anything reasonable in the circumstance to avoid physical combat before resorting . . . to force.  I also think that there . . . was a duty to retreat.  And again, the way he came up the staircase, very rare [sic] do you see a short version which conveys so much.  And there was not a doubt in my mind that he came up those stairs.  He could have retreated, he could have stayed downstairs, he could have gone down the hallway, but he came upstairs and he came upstairs to fight."
            These findings are well supported.  The video recording shows that the juvenile walked up the stairs quickly, mere seconds behind the victim, and struck the victim immediately after dodging the victim's first punch.  Even if the juvenile had not known that the victim intended to engage in a physical altercation and the juvenile had not ascended the stairs with the intent to assault the victim, once the victim took the first swing at the juvenile, the juvenile had multiple avenues of escape that he did not use.  The juvenile could have, for example, alerted the court officers standing nearby or retreated back down the stairs.
            In sum, viewing the evidence in the light most favorable to the Commonwealth, a reasonable trier of fact could have found that the juvenile did not "use all reasonable means to avoid physical combat" and therefore did not act in self-defense.  King, 460 Mass. at 83.  We therefore affirm his adjudication of delinquency for assault and battery.
            ii.  Disorderly conduct.  The juvenile also contends that there was insufficient evidence to prove disorderly conduct.  Disorderly conduct "requires proof that a person, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engaged in fighting or threatening, or in violent or tumultuous behavior or created a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor" (quotations and citation omitted).  Commonwealth v. Accime, 476 Mass. 469, 472-473 (2017).  See G. L. c. 272, § 53.
            The video recording establishes that the juvenile "engaged in fighting" in a public building and "recklessly create[ed]" a risk of "public inconvenience, annoyance or alarm," because court officers ran over to intervene and separate the juvenile and the victim while others went over either to attempt to intervene or to observe the altercation (quotations and citation omitted).  Accime, 476 Mass. at 472-473.  See Commonwealth v. Sholley, 432 Mass. 721, 728-731 (2000), cert. denied, 532 U.S. 980 (2001) (defendant committed disorderly conduct where, over course of two to three minutes, he ran through hallway of court house shouting threatening language, caused court officer to leave his primary duty to respond to noise and commotion, caused other court house employees and users alarm as they abandoned their duties or activities to see what was happening, and was pursued outside by police officers).
            The juvenile argues that because he was acting in self-defense, his conduct did not satisfy the requirements of disorderly conduct.  However, because we have already determined that the evidence supported a finding that the juvenile was not acting in self-defense, this argument is no more convincing in the context of the disorderly conduct charge.  Therefore, viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could have found each element of the offense of disorderly conduct beyond a reasonable doubt.  See Robinson, 493 Mass. at 307.
            3.  Conclusion.  We hold that a CWOF entered after an admission to sufficient facts is sufficient pursuant to § 52 to establish that a first offense had occurred.  The Juvenile Court therefore properly exercised jurisdiction over the disorderly conduct charge at issue in the instant appeal.  Additionally, we hold that there was sufficient evidence to find that the juvenile did not act in self-defense and that the juvenile committed an assault and battery and engaged in disorderly conduct.  Accordingly, we affirm the adjudications of delinquency.
So ordered.
 
--------------------------------------------
 
            [1] For purposes of this opinion, we use the term "minor misdemeanor" to refer to all misdemeanors "for which the punishment is a fine, imprisonment in a jail or house of correction for not more than 6 months or both such fine and imprisonment."  G. L. c. 119, § 52.  For all other misdemeanors, we use the term "major misdemeanor."
            [2] We note that the correct case citation format is Wallace W. v. Commonwealth, 482 Mass. 789 (2019).
            [3] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services and Citizens for Juvenile Justice.
            [4] At the request of this court, the transcript of the colloquy and the tender of plea or admission form were provided after oral argument.  We take judicial notice of these court records and reject the argument of the juvenile that we cannot consider them.  See Jarosz v. Palmer, 436 Mass. 526, 530 (2002), quoting P.J. Liacos, Massachusetts Evidence § 2.8.1, at 26 (7th ed. 1999) ("As to . . . related proceedings, a court may also take judicial notice of the records of other courts").  See also Matter of Welansky, 319 Mass. 205, 206, 210 (1946) (judge did not err by "tak[ing] judicial notice of the fact that the respondent was found guilty under the two indictments; of the fact that the respondent had taken an appeal to this court; and of the opinion of this court").
            [5] Because the video recording has no audio component, it is not known what, if anything, the victim said to the juvenile when he leaned over the railing.
            [6] Disorderly conduct is a misdemeanor punishable by "imprisonment in a jail or house of correction for not more than 6 months, or by a fine of not more than $200, or by both such fine and imprisonment."  G. L. c. 272, § 53 (a).  As such, we refer to this offense as a minor misdemeanor.  See note 1, supra.  The offense of assault and battery is punishable by "not more than 2 1/2 years in a house of correction or by a fine of not more than $1,000," G. L. c. 265, § 13A (a), and therefore is not a minor misdemeanor.
            [7] "[T]he issue of a first offense of a minor misdemeanor is one of subject matter jurisdiction; thus, it cannot be waived and can be raised by either party or the court at any time."  Commonwealth v. Nick N., 486 Mass. 696, 701 (2021).
            [8] A "Wallace W." hearing is a prearraignment evidentiary hearing in which the Commonwealth must prove that the charge upon which the complaint has issued is not the juvenile's first offense under § 52.  See Wallace W., 482 Mass. at 800-801.  Such proceedings are necessary if there has not been an adjudication, plea, or CWOF establishing that a first offense has occurred, and the Commonwealth seeks to arraign on a subsequent offense of a minor misdemeanor.  See id. at 800.
            [9] As we have previously held, the Commonwealth could proceed directly with the assault and battery charge, as such a charge was not a minor misdemeanor.  See Commonwealth v. Manolo M., 486 Mass. 678, 689 (2021) ("Where a juvenile is charged with greater offenses alongside minor misdemeanors and all charges arise from the same episode of misconduct, the Commonwealth may proceed with the greater offenses without a Wallace W. hearing").
            [10] Wallace W. hearings have lesser stakes than proceedings where a direct loss of liberty is at stake, because Wallace W. hearings "have no legal effect other than to establish that a first offense has occurred."  Wallace W., 482 Mass. at 802-803.  See Nick N., 486 Mass. at 704 (comparing Wallace W. hearings to other types of hearings).